THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM J. LENDABARKER, Defendant-Appellant.

Second District Nos. 2—90—0052, 2—90—0053 cons.

Opinion filed July 9, 1991.

Donald J. Ramsell, of Ramsell & Associates, of Wheaton, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE REINHARD delivered the opinion of the court:

Following a bench trial conducted in the circuit court of Du Page County, defendant, William J. Lendabarker, was convicted of two felony counts of driving while under influence of alcohol (DUI) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(d)(3)) and sentenced to 30 months' probation and six months' imprisonment in the county jail. As a result of his convictions, defendant's court supervision in a prior, unrelated DUI case was revoked, and a concurrent sentence of one year's probation and six months' imprisonment in the county jail, plus a $500 fine, was imposed. We have consolidated defendant's separate appeals from the felony DUI convictions and the revocation of his court supervision for the prior DUI conviction for purposes of issuing this opinion.

In his appeal from his convictions for felony DUI (No. 2—89—0053), defendant raises the following issues: (1) whether his statutory right to a speedy trial (Ill. Rev. Stat. 1989, ch. 38, par. 103—5) has been violated; (2) whether the trial court improperly allowed unsworn testimony of a nonparty at a prior unrelated hearing to be admitted in the proceedings on the speedy-trial discharge motion; (3) whether section 11—501.4 of the Illinois Vehicle Code (Vehicle Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4) denied defendant his constitutional right to confront witnesses against him; (4) whether section 11—501.4 of the Vehicle Code impermissibly conflicts with Supreme Court Rule 236(b) (134 Ill. 2d R. 236(b)); (5) whether the admission of defendant's blood-alcohol test results violated the physician-patient privilege; and (6) whether defendant was proved guilty beyond a reasonable doubt.

Defendant's appeal from the revocation of his court supervision in the prior DUI case (No. 2—89—0052) is based solely on the con-

tention that, if his subsequent DUI convictions are reversed, then the revocation of probation based on the convictions must also be reversed.

The following facts may be adduced from the record. Defendant was placed on court supervision for one misdemeanor count of DUI (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501) on March 1, 1988. This offense forms the basis of the appeal in case No. 2—90—0052.

The events leading to appeal No. 2—90—0053 then followed. On September 24, 1988, defendant was involved in an automobile accident which resulted in serious injury to Jane Hesse and Elizabeth Senk. Defendant was charged with improper lane usage (Ill. Rev. Stat. 1987, ch. 95½, par. 11—709) and one misdemeanor count of DUI. Defendant was granted an individual bond (I-bond) and ordered to appear in court on November 1, 1989. This case was assigned case No. 88—TR—126906.

In a notice of filing dated September 30, 1988, but file stamped October 6, 1988, defendant notified both the circuit clerk and the Du Page County State's Attorney's office of his filing of a demand for a speedy trial and a petition to elect treatment as an addict under section 21 of the Alcoholism and Substance Abuse Act (Substance Abuse Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 6321). Both the speedy-trial demand and the Substance Abuse Act petition were filed on October 6, 1988. Defendant's petition under the Substance Abuse Act stated that, if his petition were granted, defendant would waive his right to a speedy trial. Defendant asked the court to conduct a hearing on his petition.

On October 11, defendant filed a motion for substitution of judges based on alleged prejudice against defendant. The motion did not specify which judge was allegedly prejudiced against him.

On October 26, 1988, defendant was indicted for two counts of felony DUI based on the infliction of great bodily harm to Jane Hesse and disfigurement to Elizabeth Senk while driving under the influence of alcohol in case No. 88—CF—2235. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(d)(3).) An arrest warrant was issued on this date, and bail was fixed at $25,000. This case was assigned case No. 88—CF—2235.

On November 1, 1988, defendant's attorney appeared before Judge Richard A. Lucas on the misdemeanor counts in case No. 88—TR—126906. The following statements were made at the hearing:

> "MR. RUXTON [assistant State's Attorney]: State's motion is nolle pros, Judge, all counts.

THE COURT: Big score.

MR. RAMSELL [defense counsel]: Judge, for the record, I will be filing a speedy trial demand before you grant that motion to nolle pros. Thank you, Judge.

MR. RUXTON: Judge, is the motion granted?

THE COURT: Yes.

MR. RUXTON: Has the speedy trial demand been filed?

THE COURT: Worthless. I guess he made it orally, whatever that's worth."

The DUI and improper lane usage charges were then dismissed as a result of the State's decision to nol-pros. However, the prosecutor indicated that the State would proceed with the statutory summary suspension of defendant's driver's license. Defense counsel noted that, although defendant was in the hospital and could not be present, the statutory summary suspension hearing could proceed in defendant's absence. The trial court subsequently found in favor of defendant on the statutory summary suspension question based on the police officer's failure to appear.

The record reveals that defendant filed another Substance Abuse Act petition for treatment as an addict in case No. 88—CF—2235 on December 28, 1988. This petition was apparently a photocopy of the petition filed earlier, but with the misdemeanor case number marked out and replaced by the new case number.

The record indicates that defendant was arrested and appeared in court on case No. 88—CF—2235 on January 2, 1989. Bail was set at $5,000, and defendant was released on a recognizance bond and ordered to appear in court on January 5.

On January 5, 1989, defendant filed another written speedy-trial demand. The record reveals that on February 2, 1989, the State filed a statement of disclosure to defendant. The State disclosed, *inter alia*, that it might present certain photographs as evidence and that these photographs could be inspected by making arrangements with the State's Attorney's office. The State also disclosed that it might call medical personnel from Central Du Page Hospital and Glendale Heights Community Hospital as witnesses.

The cause was continued to April 10, 1989, on the State's motion. On April 6, 1989, defense counsel appeared in court to request a continuance. Defense counsel informed the court that he was required to appear in another county for several days beginning Monday, April 10, the date set for trial. The State did not object to the continuance. The trial court ordered that the case be continued to

May 8, 1989, and also ordered that the running of the speedy-trial period be tolled until that date.

On April 21, 1989, the State requested a continuance from the May 8, 1989, trial date because of anticipated problems in assembling witnesses. The court continued the case to June 5, 1989, for trial on the State's motion. On June 5, the State again sought a continuance, and the court continued the case to June 26, 1989, for trial.

On June 6, 1989, the State filed a supplemental disclosure to defendant naming four additional witnesses, all doctors, who might be called to testify for the State. The disclosure listed only the names and addresses of the four doctors, one of whom was Dr. Brown of the Illinois State Police Bureau of Forensic Sciences. On June 16, 1989, the State filed another supplemental disclosure to defendant indicating that the State might call an additional witness, John Steele of the Addison fire department, and introduce into evidence a post-occurrence videotape of the accident scene taken by Steele. On June 20, defendant filed a motion to dismiss the charges against him based on the alleged violation of his speedy-trial rights. Defendant did not request a ruling on the motion at that time.

The parties appeared in court on June 26, 1989, the date set for trial. Defense counsel indicated that he needed a short continuance to review the videotape recently disclosed by the State, but he contended that the time should be charged to the State because of its tardy disclosure. The prosecutor indicated that the State itself only recently learned of the existence of the videotape, and defense counsel was immediately notified that he could view the tape at the State's Attorney's office. Defense counsel agreed, but he indicated that he could not have secured an accident reconstruction expert to view the tape in such a short time. The trial court continued the case to June 30, 1989, for status and tolled the running of the speedy-trial period.

At the status hearing on June 30, 1989, defense counsel indicated that he had viewed the videotape. Defense counsel answered ready for trial, but he also indicated that, on his visit to the State's Attorney's office the day before, he was told that the State was not in possession of any photographs relating to the case. However, defense counsel subsequently learned that the State did, in fact, possess photographs. Defense counsel asked the court to exclude this evidence, along with the recently disclosed videotape and the testimony of the four doctors, from use at trial. The prosecutor responded that, although defense counsel was erroneously told the

day before that there were no photographs, the State's original disclosure filed February 2, 1989, clearly stated that the State was in possession of photographs.

The trial court stated that there had been no delay by the State in the disclosure of the photographs. As to Dr. Brown, the court stated that it would not charge defendant with any delay needed to prepare for Dr. Brown's testimony. The prosecutor responded, "[t]hen I won't use him." The court then issued an order stating, "Dr. Brown is excluded from testifying in this matter."

The parties agreed that the question of the adequacy of the State's disclosure of the other three doctors as potential witnesses should be reserved until trial. Defendant also argued that the sheriff's department possessed a report indicating that a different individual, John Kosterer, caused the accident. Defendant claimed this report should have been disclosed pursuant to *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. The report has not been made part of the record. The court stated the following regarding the recent discovery of the sheriff's report:

> "THE COURT: When that happens, whose fault is it? It's not yours as the attorney in charge of the prosecution of the case. It's not the Defendant's fault. So, whose fault is it? It's the [sheriff's] department's fault. Well, if it's the department's fault, who is chargeable?
>
> As far as [speedy trial] term time is concerned, all I can do—and I realize its designated a nonjury week—but I may be able to get jurors here to be available next week for trial. You both answered ready.
>
> MR. RAMSELL [defense counsel]: Judge, so the record is clear, how many days is Defendant going to be allowed to investigate this Brady material?
>
> THE COURT: From now until the day I set it for trial."

The trial court indicated that defense counsel previously had sufficient opportunity to examine most of the late-disclosed material. The court then set July 5, 1989, as the trial date and charged the delay to defendant.

On July 3, 1989, the State filed a certificate of impairment and a notice of appeal from the trial court's order excluding Dr. Brown from testifying. On October 12, 1989, this court entered a docket order granting the State's motion to dismiss its appeal. A copy of this order was filed in the record of the instant case on October 16, 1989. On October 20, 1989, the defendant appeared without counsel, and the prosecutor requested that the case be dismissed. The court

entered an order granting the State's motion to nol-pros the charges against defendant.

On October 24, 1989, the State filed an information charging defendant with two counts of felony DUI based on the same incident supporting the prior indictment. On that day, the State indicated it would proceed against defendant under a new case number, No. 89—CF—2388. Defense counsel argued that, based on *People v. DeBlieck* (1989), 181 Ill. App. 3d 600, 537 N.E.2d 388, the State's refiling of the charges should not be allowed because it constituted harassment, bad faith, and fundamental unfairness. The trial court issued a summons ordering defendant to appear on October 26. On October 25, 1989, defendant was reindicted on two counts of felony DUI.

On October 26, 1989, the State filed its response to the motion to dismiss, based on an alleged speedy-trial violation, filed by defendant in the prior case. The State contended that the running of the speedy-trial period had been tolled by the filing of both defendant's motion for a substitution of judges and his petitions for treatment as an addict under the Substance Abuse Act. The State also argued that defendant was hospitalized and unable to proceed to trial during the entire pendency of the original misdemeanor DUI prosecution. According to the State's calculations, only 150 days had run on the speedy-trial term.

At a hearing held October 26, 1989, defense counsel continued to maintain that the State should not have been allowed to refile the charges. The State indicated that it was ready either to argue defendant's motion to dismiss or to proceed to trial immediately. The parties then addressed which periods should be charged against the defendant for speedy-trial purposes. The trial court reserved its ruling on the issue.

The record reveals that, on October 30, 1989, the State filed a copy of the report of proceedings from a November 7, 1988, hearing in case No. 87—TR—130063. The State also filed the affidavit of Assistant State's Attorney Craig J. Chval stating that the defendant in the instant case was also the defendant in case No. 87—TR—130063. The report of proceedings indicates that defendant's father appeared at the November 7, 1988, hearing, and indicated that defendant had been in the hospital for the past six weeks.

At a hearing held November 6, 1989, the trial court denied defendant's motion to dismiss for violation of the speedy-trial statute. The court noted the filing of defendant's motion for substitution of judges and Substance Abuse Act petition and also the fact

that he was in the hospital on November 1, 1988. The court held that, because defendant was unavailable for trial during the misdemeanor proceedings, none of this time would be counted toward computation of the speedy-trial period. The court allocated the following periods to the speedy-trial period:

| Period | Days |
|---|---|
| 1/02/89 to 1/05/89 | 3 |
| 1/05/89 to 4/06/89 | 91 |
| 5/08/89 to 6/26/89 | 49 |
| 10/16/89 to 10/26/89 | 10 |
| **TOTAL** | 153 |

The court then continued the case to November 27, 1989, for trial. The court tolled the running of the speedy-trial statute until that time based on the State's inability to present a witness who had recently given birth. See Ill. Rev. Stat. 1989, ch. 38, par. 103—5(c).

At a hearing held November 17, 1989, on defendant's motion to suppress evidence, defendant asked the court to reconsider its earlier speedy-trial ruling. No motion is contained in the record, but the report of proceedings indicates that defendant tendered a handwritten motion. The trial court denied defendant's motion to suppress and reserved its ruling on the motion to reconsider the denial of defendant's speedy-trial motion to dismiss. The court denied the motion to reconsider on November 22, 1989.

The case was continued on defendant's motion to January 8, 1990, for trial. On January 2, 1990, a hearing was held on defendant's motion *in limine* to exclude blood-alcohol tests. The motion does not appear in the record. At the hearing, defendant argued that section 11—501.4 of the Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4), which allows the introduction of medical records as a business-records exception to the rule against hearsay, impermissibly conflicts with Supreme Court Rule 236. The court took the matter under advisement.

On January 8, 1990, the court denied defendant's motion *in limine* to exclude the blood-alcohol tests. On January 9, 1990, the court conducted a partially stipulated bench trial. The parties first presented their agreement that, in return for defendant's stipulation to most of the evidence, the State would recommend a sentence of 30 months' probation conditioned upon alcohol counseling and six months' imprisonment in the Du Page County jail without day-for-day credit. The prosecutor also stated that, under the agreement, the defendant's court supervision in a related case, No. 87—

TR—130063, would be revoked and a similar concurrent sentence imposed.

The court then heard the testimony of Dr. Phillip Brottman, an attending physician at Glen Oaks Hospital Emergency Department. Dr. Brottman, testifying for the State, said that he treated defendant for multiple injuries on September 24, 1987, and that he ordered defendant's blood to be drawn for purposes of testing. Dr. Brottman explained the normal process by which such blood samples are tested by hospital personnel and the results entered in the patient's medical records. Dr. Brottman identified People's exhibit No. 5 as a copy of a typical reporting slip recording different lab results, including blood-alcohol tests, compiled in the normal course of emergency room treatment. The witness testified the lab test results in People's exhibit No. 5 revealed that defendant's blood-alcohol content was 272 milligrams per decile.

On cross-examination, Dr. Brottman testified that he did not observe the blood-alcohol test of defendant's blood and did not know who performed the test. He further testified that, although lab test results are usually entered into a patient's emergency room face sheet, defendant's blood-alcohol test results were not entered into his face sheet. Dr. Brottman had no personal knowledge as to when he placed People's exhibit No. 5, the blood-alcohol test result, into defendant's chart. The court received People's exhibit No. 5 into evidence under the medical-records exception in section 11—501.4 of the Vehicle Code.

Defendant then stipulated that the State's witnesses would testify to the following events. On September 24, 1988, defendant was driving his automobile at a high rate of speed and weaving from lane to lane on Route 64 when he crossed the center line and collided head-on with a vehicle driven by Jane Hesse, who suffered severe injuries as a result of the accident. A paramedic summoned to the scene smelled alcohol on defendant's breath. The paramedic, a sheriff's deputy at the scene, and a nurse at the hospital where defendant was taken all were of the opinion that defendant was under the influence of alcohol. Elizabeth Senk, who was also injured in the accident, sustained a "flap injury" to the head which required sutures. The scar from the injury is permanent and cannot be completely removed, even with plastic surgery.

The trial court found defendant guilty on both counts of felony DUI and imposed the agreed-upon sentence.

On January 16, 1990, the parties presented an agreed disposition of the State's petition to revoke defendant's prior court super-

vision. The prosecutor stated that, "pursuant to the facts and the findings of guilty" in the stipulated bench trial on the felony DUI counts, defendant's supervision would be revoked and he would be sentenced to one year's probation with six months' imprisonment in the Du Page County jail to run concurrently with the prior sentence. The court revoked defendant's supervision and imposed the agreed-upon sentence.

Defendant's first argument on appeal in case No. 2—90—0053 is that his statutory right to a speedy trial has been violated. As an initial inquiry in this regard, we must determine the date on which defendant's demand for a speedy trial was effectively filed for purposes of computing the running of the statutory speedy-trial period.

■ Noting that the filing of a speedy-trial demand with the circuit clerk does not give the State constructive notice of such a filing (*People v. Jones* (1981), 84 Ill. 2d 162, 169, 417 N.E.2d 1301), the State contends that defendant failed to notify the State of the speedy-trial demand he filed October 6, 1988. However, the notice of filing which accompanied the speedy-trial demand clearly states that notice thereof was sent to both the circuit clerk and the office of the State's Attorney, and both the notice of filing and the demand were file stamped October 6, 1988. Absent any evidence of nonreceipt presented by the State, we find that defendant's speedy trial demand was effectively filed on October 6, 1988.

■■ ■ We now examine whether defendant was brought to trial within the prescribed period. Section 103—5(b) of the Code of Criminal Procedure of 1963 provides that persons on bail or recognizance shall be tried within 160 days of the date defendant demands trial unless the delay is occasioned by the defendant. (Ill. Rev. Stat. 1989, ch. 38, par. 103—5(b).) This statutory provision implements the right to a speedy trial guaranteed by the United States and Illinois Constitutions, although the protections of the constitutional and statutory provisions are not necessarily coextensive. (*People v. Bowman* (1990), 138 Ill. 2d 131, 136, 561 N.E.2d 633.) The speedy-trial statute is to be construed liberally, and each case is to be decided on its own facts. (*Bowman*, 138 Ill. 2d at 136-37, 561 N.E.2d at 636.) On a motion to dismiss for violation of the statutory right to a speedy trial, the defendant bears the burden of establishing a speedy-trial violation. The trial court's ruling on a motion to dismiss is entitled to much deference and will be sustained absent a clear showing that the court abused its discretion. *Bowman*, 138 Ill. 2d at 137, 561 N.E.2d at 636.

■ At issue here is the question of what periods of pretrial delay were occasioned by defendant. For purposes of a speedy-trial question, a delay is chargeable to the accused where his act in fact causes or contributes to the delay. (*Bowman*, 138 Ill. 2d at 140, 561 N.E.2d at 637.) The State concedes that 153 days are attributable to the State for purposes of computing the speedy-trial period. The dispute here centers about the proper allocation of four separate periods of pretrial delay.

The first period is the 26 days between October 6, 1988, and November 1, 1988. The State contends that the running of the speedy-trial period did not commence with the filing of the speedy-trial demand on October 6, 1988, for several reasons. First, the State notes that defendant also filed a petition for treatment under the Substance Abuse Act on October 6, and the State argues that the filing of the petition tolled the running of the statute. Second, the State contends that, because defendant was in the hospital, he could not have proceeded to trial anytime during the period at issue. Therefore, the State argues, the delay is at least partially attributable to the defendant. Finally, the State also argues that defendant's motion for substitution of judges on October 11, 1988, also tolled the running of the statutory period.

■ Defendant's petition for treatment, which was apparently made under the former version of the Substance Abuse Act allowing for treatment before conviction (Ill. Rev. Stat. 1985, ch. 111½, par. 6322 (amended by Pub. Act 85—498, eff. Jan. 1, 1988)), waived defendant's rights to a speedy jury trial and specifically requested a hearing on the petition. The delay caused by a defendant's filing of motions is ordinarily chargeable to the defendant. (*People v. Jones* (1984), 104 Ill. 2d 268, 277, 472 N.E.2d 455.) The defendant is charged with the time naturally associated with processing the motion, including the time necessary for the State to respond and that necessary for the court to hear and decide the issues raised. (*People v. DeCarlis* (1980), 88 Ill. App. 3d 634, 637-38, 410 N.E.2d 677.) Here, the speedy-trial period did not commence on October 6, 1988, because that same day defendant filed a petition under the former version of the Substance Abuse Act waiving his right to a speedy jury trial and asking for a hearing. The filing of defendant's motion for substitution of judges also was sufficient to toll the statute when it was filed on October 11, 1988. *People v. Helton* (1987), 153 Ill. App. 3d 726, 730, 506 N.E.2d 307.

Defendant argues, however, that the filing of the Substance Abuse Act petition and the motion for substitution of judges did not

*in fact* lead to a delay chargeable to him because the State nol-prossed the charges on November 1, 1988, and no hearing was held on the petition. Thus, defendant contends, because the State's decision to nol-pros the charges made it unnecessary for the court to address the petition and the motion, no delay was caused by their filing. However, in *People v. Donalson* (1976), 64 Ill. 2d 536, 542, 356 N.E.2d 776, the supreme court rejected such reasoning as "faulty." Rather than focusing on the disposition of the defendant's motion, the court in *Donalson* held that the important consideration is that "[t]he mere filing of the motion eliminated the possibility that the case could be immediately set for trial." (*Donalson*, 64 Ill. 2d at 542, 356 N.E.2d at 778.) Here, too, the filing of the motion and the petition made it impossible to set the case for trial before resolving the motions.

We conclude that the trial court did not abuse its discretion by charging the period between October 6, 1988, and November 1, 1988, to defendant as a result of his filing of a motion for substitution of judges and a Substance Abuse Act petition. This conclusion makes it unnecessary for us to address the State's suggestion that this time is chargeable to defendant because he was hospitalized and unable to go to trial. Similarly, we need not address defendant's contention that the trial court erroneously relied on the transcripts of proceedings compiled in another case to establish that defendant was, in fact, hospitalized during the period in question.

■■ The second period at issue is the four days between April 6, 1989, and April 10, 1989. Defendant contends that, although the trial court charged him with the entire delay between April 6, 1989, and May 8, 1989, he should only be responsible for the period beginning on April 10, 1989.

We agree. The case was continued on the State's motion to April 10. Defendant's attorney came into court on April 6 to seek a continuance because he was required to appear in another case on April 10. There is no reason for the trial court to have charged the delay from April 6, when defendant requested the continuance, to April 10, the date set for trial. To do so would punish the defendant for coming into court ahead of time to inform the court of the conflict. Since the *actual* delay chargeable to defendant did not begin until April 10, when his attorney was engaged in another trial, we find that these four days were improperly excluded from the speedy-trial computations. At this point in our calculation, then, the total of the speedy-trial period is 157 days.

The third period at issue is the seven days between June 26, 1989, to July 3, 1989. Defendant answered ready for trial on June 26, 1989, but also asked the court for a continuance so that he could review a videotape which the State had disclosed on June 16, 1989. The matter was continued to June 30, 1989, when defendant again answered ready but sought time to investigate the contents of a sheriff's report which he said he had recently discovered. The trial court continued the matter until July 5, 1989, for trial and charged the entire seven-day delay to defendant.

■■ Defendant argues that he was not responsible for the late discovery of the videotape and that, therefore, the delay necessary for examination of the videotape should not be charged to him. Defendant seeks to ascribe this period to the State even though the record shows that the State was diligent in informing defendant of the videotape, which had been in the possession of the fire department, once it was discovered by the State. Defendant was informed 10 days before trial that the videotape had been discovered and could be viewed at any time. Defendant stated he needed additional time only because he could not secure an expert to examine the videotape, and it was defendant who requested the continuance for this purpose. This situation is really no different than if defendant himself had recently discovered new evidence and asked for a continuance to evaluate it; under such circumstances, the delay would certainly not be charged to the State. (See *People v. Turner* (1989), 128 Ill. 2d 540, 551-54, 539 N.E.2d 1196.) We believe that the trial court did not abuse its discretion in charging defendant with the continuance he requested to examine the videotape.

Thus, defendant was properly charged with the delay commencing June 26, 1989, and running through June 30, 1989, the date the trial court set for a status hearing. While defendant objected to this delay being charged to him, he did not disagree with the trial court's decision to set the matter for status, rather than trial, on June 30. The continuance for a status hearing on June 30 eliminated the possibility that the case could be set for trial that day, so the period of delay chargeable to defendant must extend beyond June 30. (See *Donalson*, 64 Ill. 2d at 542, 356 N.E.2d at 778.) The trial court set the matter for trial on the next available date, July 5. However, the State's subsequent filing of its interlocutory appeal on July 3 tolled the running of the speedy-trial period as of that date. In total, then, the seven days between June 26, 1989, and July 3, 1989, were properly charged to defendant.

Having concluded that defendant was properly charged with the delay up to July 3, 1989, it is unnecessary for us to address defendant's separate contention that, because of the State's failure to disclose certain photographs on the day arranged and because of defendant's discovery of an undisclosed sheriff's report on June 30, the State is responsible for the delay between June 30 and July 3. Because it was already necessary to schedule the matter for a trial date subsequent to the June 30 status hearing, neither the late discovery of the sheriff's report nor the failure to receive the photographs on the day arranged had any bearing on the period of delay. Defendant remains chargeable with the delay through July 3.

Additionally, the record, which does not contain the sheriff's report itself, reveals that defendant's attorney had already reviewed the report by June 30 and was effectively given until the July 5 trial date to investigate it. Even if we assume, *arguendo*, that the sheriff's report constituted *Brady* material subject to disclosure by the State, defendant does not contend that the time allowed was insufficient for investigation of the report. (See *People v. Lovitz* (1976), 39 Ill. App. 3d 624, 631, 350 N.E.2d 276.) As for the photographs of the scene of the accident which were mistakenly not turned over to defendant at the time arranged, the trial court correctly noted that the photographs had been disclosed to defendant months earlier. Any delay necessitated by defense counsel's need to inspect the photographs at such a late date was properly attributed to defendant rather than the State.

■ The fourth and final period at issue is the 3½-month period between the July 3, 1989, filing of the State's notice of appeal of the order excluding Dr. Brown's testimony to the October 16, 1989, filing in the trial court of the appellate court order noting the State's voluntary dismissal of the appeal. We note that, even though the prosecutor agreed not to use Dr. Brown's testimony in the face of the trial court's indication that a continuance would be charged to the State, the court nonetheless did enter an order excluding Dr. Brown from testifying. Though not precisely a suppression of evidence, this order had the same substantive effect and was, on its face, subject to appeal by the State. See *People v. Phipps* (1980), 83 Ill. 2d 87, 90-91, 413 N.E.2d 1277.

Defendant concedes that, under Supreme Court Rule 604(a)(4) (134 Ill. 2d R. 604(a)(4)), the time during which an appeal filed by the State is pending is not counted for purposes of determining whether defendant's speedy-trial rights have been violated. However, defendant contends that the State's appeal here was not taken

in good faith and, therefore, should not have tolled the running of the statutory period. Defendant's contention is based on three essential elements: (1) that the State's appeal was subsequently abandoned; (2) that there was no reason for the State to appeal the exclusion of Dr. Brown's testimony, which the State itself had agreed to, except to toll the running of the statute; and (3) the fact that the State knew that the case could not be brought to trial within the one-week remaining on defendant's speedy-trial demand because the period expired in a nonjury week.

In *People v. Jones* (1984), 104 Ill. 2d 268, 472 N.E.2d 455, the supreme court expressly declined to address the question of whether an appeal would not toll the running of the speedy-trial period if it were brought by the State in bad faith. (*Jones,* 104 Ill. 2d at 284, 472 N.E.2d at 462.) The court stated, however, that the subsequent dismissal of the State's appeal is not in itself an indication that it was not brought in good faith. (*Jones,* 104 Ill. 2d at 284, 472 N.E.2d at 462.) In any event, *Jones* did not explicitly establish any "bad-faith exception" to the clear and unequivocal provision in Supreme Court Rule 604(a)(4) that the speedy-trial period does not run during the pendency of the State's appeal. To the contrary, the supreme court has stated that it must "rely solely upon the good-faith evaluation by the prosecutor of the impact of the suppression order on his case" in assessing the appealability of a pretrial suppression order. (*People v. Young* (1980), 82 Ill. 2d 234, 247, 412 N.E.2d 501.) The exception which defendant asks us to engraft upon Supreme Court Rule 604(a)(4) would effectively modify the rule. We decline to take such an action without a more explicit directive from the supreme court.

■■ We, therefore, conclude that, pursuant to Supreme Court Rule 604(a)(4), the delay during the pendency of the State's appeal is not counted toward the speedy-trial period. The only period the trial court incorrectly ascribed to the defendant, then, was the four-day period between April 6, 1989, and April 10, 1989. However, the addition of these four days brings the speedy-trial term to only 157 days, which is within the prescribed 160 days. Thus, the trial court correctly concluded that defendant was brought to trial within the time required by section 103—5.

■■ Defendant's next contention is that section 11—501.4 of the Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4) unconstitutionally denied him his sixth amendment right to confront witnesses against him. Section 11—501.4 of the Vehicle Code allows written blood-alcohol test results to be admitted under certain cir-

cumstances in DUI and reckless homicide prosecutions as a form of the business-records exception to the rule against hearsay. Section 11—501.4 provides, in pertinent part, as follows:

"§11—501.4. Admissibility of written blood alcohol test results conducted in the regular course of providing emergency medical treatment. (a) Notwithstanding any other provision of law, the written results of blood alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business record exception to the hearsay rule only in prosecutions for any violation of Section 11—501 of this Code or a similar provision of a local ordinance, or in prosecutions for reckless homicide brought under the Criminal Code of 1961, when each of the following criteria are met:

(1) the blood alcohol tests were ordered by a physician on duty at the hospital emergency room and were performed in the regular course of providing emergency medical treatment in order to assist the physician in diagnosis or treatment;

(2) the blood alcohol tests were performed by the hospital's own laboratory; and

(3) the written results of the blood alcohol tests were received and considered by the physician on duty at the hospital emergency room to assist that physician in diagnosis or treatment." Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4.

Defendant notes that this provision allows the introduction of blood-alcohol tests, which constitute hearsay, without the supporting testimony of the medical personnel who actually tested the blood. Defendant contends that the failure to allow him to confront and cross-examine such personnel violates his sixth amendment right to confront witnesses against him. U.S. Const., amend. VI.

■■■ While a literal interpretation of the confrontation clause of the sixth amendment would bar the use of any out-of-court statement when the declarant is unavailable, the Supreme Court has rejected this view as unintended and too extreme. The confrontation clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant. (*Idaho v. Wright* (1990), 497 U.S. 805, 813, 111 L. Ed. 2d 638, 651, 110 S. Ct. 3139, 3145.) A two-step process, first set forth in *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531, is utilized when determining whether hearsay may be admitted in a criminal prosecution without offending the confrontation clause. First, in the usual case the prosecution must either produce or demonstrate the unavailability of the

declarant whose statement is to be used against the defendant. Second, once a witness is shown to be unavailable, his statement is admissible only if it bears adequate indicia of reliability. Reliability can be inferred without more if the evidence falls within a firmly rooted exception to the rule against hearsay. *Wright,* 497 U.S. at 814-15, 111 L. Ed. 2d at 651-52, 110 S. Ct. at 3146.

As for the first prong of the *Roberts* test, it should be noted that a showing of the declarant's unavailability is not always required in order to introduce an out-of-court statement into evidence. (*United States v. Inadi* (1986), 475 U.S. 387, 394, 89 L. Ed. 2d 390, 398, 106 S. Ct. 1121, 1125.) This is true when the utility of trial confrontation is remote. (*Roberts,* 448 U.S. at 65 n.7, 65 L. Ed. 2d at 607 n.7, 100 S. Ct. at 2538 n.7.) It is generally recognized that persons making business records are unlikely to recall the details of specific transactions, indicating that their testimony will be of little or no value. (See E. Cleary, McCormick on Evidence §311 (2d ed. 1972).) The same could be said of emergency room personnel compiling the results of blood-alcohol tests for the use of the treating physician; records compiled for use in making life-and-death decisions carry an inherent degree of reliability. (See E. Cleary, McCormick on Evidence §313 (2d ed. 1972).) Thus, in the context of the particular dimension of the business-records exception manifested in section 11—501.4 of the Vehicle Code, reliability would not be materially enhanced by requiring the State to demonstrate the unavailability of the persons who compiled the medical record.

As for the second prong of the *Roberts* test, it is clear that the business-records exception to the rule against hearsay is firmly rooted in the law. (*United States v. Ray* (9th Cir. 1990), 920 F.2d 562, 566, *amended on rehearing* (9th Cir. 1990), 930 F.2d 1368; see also *People v. Smith* (1990), 141 Ill. 2d 40, 78, 565 N.E.2d 900; 32B Am. Jur. 2d *Federal Rules of Evidence* §204, at 584 (1982).) This is sufficient, without more, to infer reliability. (*Wright,* 497 U.S at 815, 111 L. Ed. 2d at 652, 110 S. Ct. at 3146.) Defendant argues, however, that section 11—501.4 does not possess a number of the requirements of the traditional business-records exception, specifically that: (1) the person compiling the record is unavailable as a witness; (2) the entry was made in the regular course of business; and (3) the maker of the record was under a duty to make such a record. In essence, defendant argues that section 11—501.4 is so dissimilar to the traditional business-records exception that it is, therefore, *not* a firmly rooted hearsay exception sufficient to support an inference of reliability.

■■ As discussed above, most jurisdictions do not require a strict showing that the maker of the business record is unavailable to testify, so the fact that section 11—501.4 does not contain such a requirement does not represent a departure from the traditional business-records exception which is firmly rooted in the law. Moreover, section 11—501.4 requires that the blood-alcohol test be ordered by the physician in the "regular course of providing emergency medical treatment" and that it be performed by the hospital's own laboratory. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4.) This is substantially similar to the requirements of Illinois' generally applicable business-records exception applicable in criminal prosecutions. See Ill. Rev. Stat. 1989, ch. 38, par. 115—5.

Defendant makes much of the fact that Illinois has heretofore not allowed medical records to be included within the business-records exception in criminal (Ill. Rev. Stat. 1989, ch. 38, par. 115—5(c)(1)) or civil (134 Ill. 2d R. 236(b)) proceedings. However, this is almost uniformly not the case in other States. (See generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.11, at 658 (5th ed. 1990).) As a matter of Federal constitutional law, this is the more relevant focus in determining whether the exception is to be considered "firmly rooted" in the law. Section 11—501.4, which represents a limited facet of the traditional business-records exception to the rule against hearsay, is sufficiently similar to the common-law rule that it, too, can be viewed as firmly rooted. We conclude that section 11—501.4 does not unconstitutionally deny defendants their sixth amendment right to confront their accusers.

■■ Defendant next contends that section 11—501.4 of the Vehicle Code is invalid because it conflicts with Supreme Court Rule 236(b) (134 Ill. 2d R. 236(b)), which provides that medical records shall not be admissible under the business-records exception. Defendant correctly notes that, where a legislative enactment directly and irreconcilably conflicts with a rule promulgated by the supreme court, the rule will prevail. (*People v. Felella* (1989), 131 Ill. 2d 525, 538, 546 N.E.2d 492.) Rule 236, however, is applicable in only civil, not criminal, proceedings. (134 Ill. 2d R. 1, Committee Comments.) Section 11—501.4, on the other hand, applies to criminal prosecutions, so there is no conflict between the statute and the rule in this criminal case.

■■ Defendant's final two contentions on appeal are that the admission of the defendant's blood-alcohol test violated the physician-patient privilege (see Ill. Rev. Stat. 1989, ch. 95½, par.

11—501.4(b)) and that he was not proved guilty beyond a reasonable doubt of felony DUI. Defendant explicitly recognizes in his brief however, that both of these contentions are premised on the assumption that this court would find section 11—501.4 of the Vehicle Code invalid. As we have found the statute to be valid, defendant's final two arguments fail by their own terms.

 Defendant's sole contention in his appeal from the revocation of his court supervision in case No. 2—90—0052 is that, if his felony DUI convictions are set aside, then there is no basis upon which the trial court could have revoked his court supervision in case No. 2—90—0052. However, because we here affirm defendant's convictions in case No. 2—90—0053, this argument is necessarily rejected.

The judgments of the circuit court of Du Page County in case Nos. 2—90—0052 and 2—90—0053 are affirmed.

Affirmed.

NICKELS and DUNN, JJ., concur.