NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210746-U

NO. 4-21-0746

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 14, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Logan County |
| GERALD L. THOMAS JR., | ) | No. 17CF202 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justice Steigmann concurred in the judgment.
Justice Turner specially concurred.

**ORDER**

¶ 1     *Held*: The appellate court (1) denied defendant's motion to proceed *pro se* on appeal
        and (2) affirmed the circuit court's second-stage dismissal of defendant's
        postconviction petition, concluding defendant failed to make a substantial
        showing of ineffective assistance of trial and appellate counsel.

¶ 2     Defendant, Gerald L. Thomas Jr., appeals from the Logan County circuit court's

second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act

(Postconviction Act) (725 ILCS 5/122-1 to 122-7 (West 2020)) alleging, *inter alia*, ineffective

assistance of appellate and trial counsel for failing to protect his statutory right to a speedy trial.

Specifically, defendant argues the trial court's finding that the delay attributable to the State was

fewer than 120 days was erroneous, and he therefore made a substantial showing of ineffective

assistance of trial and appellate counsel. The State argues the trial court's determination that the

speedy trial clock stood at fewer than 120 days when trial commenced was correct and dismissal of defendant's petition was proper.

¶ 3　　　　On appeal, the Office of the State Appellate Defender (OSAD) was appointed to represent defendant. Following the filing of defendant's opening brief and the State's responsive brief, OSAD moved to withdraw as counsel on the basis defendant wished to proceed *pro se*, which this court denied. Defendant, *pro se*, has filed motions to stay the entry of judgment, strike OSAD's opening brief, and leave to file his *pro se* brief *instanter*.

¶ 4　　　　We (1) deny defendant's *pro se* motions and (2) affirm the circuit court's dismissal of defendant's postconviction petition.

¶ 5　　　　　　　　　　　　I. BACKGROUND

¶ 6　　　　On December 11, 2017, a grand jury charged defendant by indictment with two counts of attempt (first degree murder), a Class X felony (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)) (counts I and II); aggravated battery, a Class X felony (*id.* § 12-3.05(e)(1)) (count III); aggravated discharge of a firearm, a Class 1 felony (*id.* § 24-1.2(a)(2)) (count IV); and unlawful possession of a weapon by a felon, a Class 3 felony (*id.* § 24-1.1(a)) (count V).

¶ 7　　　　　　　　　A. Pretrial Appearances and Guilty Verdicts

¶ 8　　　　Because this appeal challenges the calculation of delays attributable to defendant with respect to the speedy trial clock, we chronologize defendant's pretrial court appearances below.

¶ 9　　　　Defendant's arraignment occurred on December 29, 2017, and the trial court scheduled his trial for February 26, 2018. On January 2, 2018, defendant appeared in custody with his attorney, and the trial court denied his motion to reduce his bond. At a January 31 status

hearing, defense counsel requested to reset the trial date, as there was outstanding discovery. Following this request, the trial court addressed defendant as follows:

> "[Y]our counsel is asking that we continue this case from the February jury calendar to the April jury calendar. You are in custody; and because you are in custody, you have the right to a speedy trial; that is, a trial within 120 days. That's by statute. But any time that you or your attorney cause any continuance or delay in the cause, that stops the running of that speedy trial clock, and it will not start again until the case could be set down for trial."

Defendant indicated he understood and agreed to proceed with an April jury trial. The trial court found defendant's waiver of his right to a speedy trial to be knowing and voluntary, vacated the February jury trial date, and reset the trial date for April 16.

¶ 10 Defense counsel requested to continue the trial at three consecutive status hearings held on March 21, May 23, and July 18, citing outstanding discovery. Upon each request, the court admonished defendant of his speedy trial rights and informed him that each continuance would toll the speedy trial clock. On all three occasions, defendant agreed he understood and wished to continue the trial, and the trial count found his waivers to be knowing and voluntary. At the July 18 hearing, the court set the case for an October 15 jury trial.

¶ 11 On September 19, the parties informed the court they were prepared to proceed to trial. Because the State had filed a motion to join defendant's case with that of his codefendant, Casey Cottrill, the court set the matter for a hearing on September 28. The case remained set for an October 15 jury trial.

¶ 12 At the September 28 hearing, the court granted the State's motion to join defendant's case with Cottrill's on a preliminary basis. At an October 4 status hearing, Cottrill's

counsel requested to move the trial date back, noting Cottrill had a number of pending motions that could not be heard by the October 15 trial date. At the same hearing, defendant's counsel requested defendant's case be heard by a separate jury because certain evidence Cottrill wished to have admitted at trial, if allowed, implicated the fairness of a joint trial. Defendant's counsel further emphasized defendant's desire to proceed to trial on October 15. The State had no objection to moving the trial date to December, and the court vacated the October 15 trial date and reset the trial date to December 7.

¶ 13        At a November 7 status hearing, the court allowed the State's unopposed motion to sever defendant and Cottrill's jury trials. The court noted defendant's trial was still set for December 7.

¶ 14        On December 7, defendant waived his right to a jury trial, electing instead to have a bench trial. Following the bench trial, the trial court found defendant guilty of counts I, II, III, and V. Defendant filed a motion for a new trial, arguing the evidence was insufficient to find defendant guilty of any of the charged offenses beyond a reasonable doubt, which the trial court denied. At sentencing, the court found count III merged with count II and sentenced defendant to consecutive sentences of 55, 21, and 10 years in prison on counts I, II, and V, respectively. Defendant filed a motion to reconsider his sentences, arguing they were excessive, which the trial court denied. Defendant filed a timely notice of appeal, which was docketed as case No. 4-19-0099.

¶ 15                        B. Posttrial Proceedings

¶ 16        In August 2019, while defendant's direct appeal was pending, defendant *pro se* filed a postconviction petition, alleging, among other things, his trial counsel was ineffective for failing to move to discharge his case on the grounds of a speedy-trial violation. After 90 days

lapsed without a ruling on the petition, the trial court docketed defendant's petition for further proceedings and appointed postconviction counsel to represent him. In March 2021, postconviction counsel filed an amended petition, incorporating defendant's initial petition and additionally asserting defendant's appellate counsel was ineffective for failing to raise the speedy trial issue on direct appeal. Postconviction counsel attached defendant's appellate counsel's opening brief in case No. 4-19-0099 and acknowledged defendant's direct appeal remained pending.

¶ 17        On April 29, 2021, the State filed a motion to dismiss defendant's amended petition, arguing defendant failed to make a substantial showing his constitutional rights were violated because the time attributable to the State with respect to the speedy trial clock was fewer than 120 days, and therefore any claim trial and appellate counsel were ineffective for failing to raise this issue was meritless.

¶ 18        On May 7, 2021, the trial court allowed defendant to discharge his postconviction counsel and proceed *pro se*. Defendant thereafter filed a second amended postconviction petition, which incorporated the previous two petitions and raised additional arguments which are not at issue in this appeal.

¶ 19        On June 11, 2021, while defendant's second amended petition was pending, this court affirmed defendant's convictions on direct appeal. *People v. Thomas*, 2021 IL App (4th) 190099-U, ¶ 3.

¶ 20        On June 21, 2021, the State filed a motion to dismiss defendant's second amended petition, again arguing any claim trial and appellate counsel were ineffective for failing to raise a speedy trial violation was meritless.

¶ 21        Defendant filed a response to the State's motion, arguing the State's calculation of the number of days of delay attributable to it was incorrect. Specifically, although both parties agreed the speedy trial clock began to run on December 11, 2018, defendant argued it continued running until February 26, 2018—and not January 31, 2018, as the State asserted. Citing *People v. Lendabarker*, 215 Ill. App. 3d 540 (1991), and *People v. Boyd*, 363 Ill. App. 3d, 1027 (2006), defendant argued "delay" meant a delay in the holding of defendant's trial. Even though defendant agreed on January 31, 2018, to set a new trial date for April 2018, defendant's argument continued, because the previous trial date had been set for February 26 by the State, there was no delay *caused by defendant* until after February 26. When added to the 115 days the State conceded were attributed to it, the delay between December 11, 2018, and February 26, 2018, constituted a violation of defendant's speedy trial rights.

¶ 22        In December 2021, the trial court allowed the State's motion to dismiss defendant's second amended petition. Specifically, the trial court found *Boyd* was factually distinguishable and agreed with the State the speedy trial clock began to toll on January 31, 2018, and not February 26, 2018. The court concluded because there was no speedy trial violation, trial and appellate counsel were not ineffective for failing to raise the issue.

¶ 23        Defendant filed a timely notice of appeal, and on December 28, 2021, this court appointed OSAD to represent defendant. OSAD filed an opening brief on May 31, 2022.

¶ 24        On June 10, 2022, defendant filed a petition for leave to file a *pro se* brief, stating he had discussed with defense counsel in a single phone call "what should and what should not be raised in his brief." Defendant asserted he "did not get to finish raising certain points to his counsel" and requested counsel file a motion for extension of time to file an initial brief. Defendant stated, thereafter, counsel had not returned his phone calls and "since he would not

respond to him," requested that his counsel withdraw from his case. Defendant asserted he filed his *pro se* brief "in order to preserve his rights."

¶ 25　　　　The State filed its responsive brief on June 17, 2022.

¶ 26　　　　On June 21, 2022, defendant filed a "motion to withdraw appellate counsel" and to strike OSAD's opening brief filed on May 31, 2022. In this motion, defendant asserted he waived his right to counsel "under the Sixth Amendment" and reasserted the arguments he made in his petition for leave to file a *pro se* brief: (1) that counsel failed to contact defendant after their initial phone conversation and (2) counsel "waived multiple contentions that [defendant] raised in his Post-Conviction Petition, and only raised a single violation" on appeal.

¶ 27　　　　On June 22, 2022, OSAD filed a motion to withdraw as defendant's counsel on appeal and to permit defendant to proceed *pro se*. OSAD asserted that although defendant mailed a letter requesting to proceed *pro se* prior to the filing of the opening brief, defense counsel did not receive the letter until after the brief had been filed. OSAD did not provide any further details regarding the letter and the letter is not a part of the record. The State objected, and this court denied OSAD's motion on July 5, 2022, stating: "IT IS ORDERED that the Motion to Withdraw as Counsel and Allow Appellant to Proceed *Pro se* is denied." On August 1, 2022, defendant filed a motion to stay the entry of judgment and requesting a ruling be made on his various motions.

¶ 28　　　　　　　　　　　　　　　II. ANALYSIS

¶ 29　　　　On appeal, OSAD has filed a brief arguing the trial court erroneously dismissed defendant's second amended petition at the second stage of proceedings because the petition made a substantial showing of ineffective assistance of trial and appellate counsel. The State responds dismissal was proper because defendant's speedy trial rights were not violated and

therefore, he cannot make a substantial showing he was denied the effective assistance of trial and appellate counsel. Defendant has *pro se* filed a motion to stay the entry of judgment, seeking rulings on multiple motions he has filed seeking to proceed *pro se* on appeal. We (1) deny defendant's *pro se* motion and (2) affirm the trial court's judgment.

¶ 30                                    A. Defendant's *Pro Se* Motion

¶ 31          We first address defendant's *pro se* motion to stay the entry of judgment filed on August 1, 2022. Defendant seeks rulings on his motions to strike OSAD's opening brief and for leave to file his *pro se* brief *instanter*. This court has already denied defendant's multiple requests to proceed *pro se* on appeal. On June 22, 2022, OSAD filed a motion to withdraw as defendant's counsel on appeal and to permit defendant to proceed *pro se*. On July 5, 2022, this court entered an order denying OSAD's motion, stating: "IT IS ORDERED that the Motion to Withdraw as Counsel and Allow Appellant to Proceed *Pro se* is denied."

¶ 32          Moreover, we note that although the sixth amendment to the United States Constitution guarantees a criminal defendant the right to represent himself at trial (see U.S. Const., amend. VI; *Faretta v. California*, 422 U.S. 806 (1975)), there is no federal constitutional right to self-representation on appeal. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 154 (2000). Illinois Supreme Court Rule 651(d) (eff. Jul. 1, 2017), provides, "The procedure for an appeal in a post-conviction proceeding shall be in accordance with the rules governing criminal appeals." Illinois Supreme Court Rule 607(a) (eff. Jul. 1, 2017), which governs criminal appeals, provides that the trial court may appoint counsel for a defendant on appeal if it "determines that the defendant is indigent *and desires counsel on appeal*." (Emphasis added.) Based on the language of Rule 607(d), "the appointment of counsel [on appeal]—and, arguably, the counsel's continuing tenure—is conditional on the defendant's desire for such counsel."

*People v. Jackson*, 362 Ill. App. 3d 1196, 1199 (2006). However, "[e]ven when defendants have a *constitutional* right to represent themselves, they must assert that right in a timely *** manner." (Emphasis in original.) *Id.* at 1200.

¶ 33        Defendant argues his request to proceed *pro se* was timely because he both (1) sent a letter to OSAD requesting to proceed *pro se* prior to the filing of the opening brief and (2) informed this court he wished to proceed *pro se* prior to the filing of the State's responsive brief.

¶ 34        We find this court's decision in *Jackson*, 362 Ill. App. 3d at 1198, to be instructive here. In that case, this court denied the defendant's motion to proceed *pro se* on appeal from the dismissal of his postconviction petition for two reasons. First, the defendant failed to cite to relevant authority in support of his request, and therefore his motion did not conform with Illinois Supreme Court Rule 361(a) (eff. Jan.1, 2006). *Jackson*, 362 Ill App. 3d at 1199 (stating, under Rule 361, a motion to proceed *pro se* must state both the relief sought and the grounds therefore). Second, because the defendant made his request after defense counsel and the State had filed their respective briefs, we found that "judicial efficiency outweigh[ed] [the] defendant's interest in individual autonomy." *Id.* at 1200.

¶ 35        Here, as in *Jackson*, defendant's motion to proceed *pro se* on appeal from the dismissal of his postconviction petition contravenes Illinois Supreme Court Rule 361(a) (eff. Dec. 1, 2021) because he states no relevant grounds on which his motion should be granted. Defendant simultaneously (1) acknowledges that he does not have a constitutional right to represent himself on appeal and (2) argues he has a "constitutional right of due process and the right to petition." Without citation to authority, defendant merely asserts appellate counsel did not spend enough time speaking with him on the phone, did not respond to correspondence from

his family members, and "waived multiple contentions that [he] raised in his *** petition" in the name of "strategy." As in *Jackson*, "[a] reviewing court 'is not simply a repository in which appellants may dump the burden of argument and research.' " *Jackson*, 362 Ill. App. 3d at 1199 (quoting *People v. Chatman*, 357 Ill. App. 3d 695, 703 (2005)).

¶ 36        Moreover, although this court received defendant's June 7 request to file his *pro se* brief prior to the filing of the State's brief on June 17, we find that his request was nonetheless not timely and effectively made because OSAD had already filed its brief. OSAD was appointed to represent defendant in December 2021, and defendant had several months to file a motion to proceed *pro se* prior to the filing of the opening brief. We find that although this case is distinguishable from *Jackson* in that it was not *fully* briefed when defendant's request was received, the interest in judicial efficiency still outweighs defendant's interest in individual autonomy at this late point in the proceedings. See *id.* at 1200; see also *Martinez v. Court of Appeal of California, Fourth Appellate District*, 628 U.S. 152, 163 (2000) ("[T]he States are clearly within their discretion to conclude that the government's interests outweigh an invasion of the appellant's interest in self-representation.").

¶ 37                B. Ineffective Assistance of Trial and Appellate Counsel

¶ 38        On appeal, defendant argues the trial court erroneously dismissed his second amended petition at the second stage of proceedings because he made a substantial showing he was denied the effective assistance of both trial and appellate counsel. Specifically, defendant argues but for trial counsel's failure to raise the issue of a speedy trial violation, the charges against him would have been dismissed, and but for appellate counsel's failure to raise the issue of trial counsel's ineffectiveness, his conviction would have been reversed on appeal. The State responds no speedy trial violation occurred, and therefore defendant has failed to make a

substantial showing of ineffective assistance of trial and appellate counsel. We agree with the State.

¶ 39                              1. *Postconviction Proceedings*

¶ 40        The Postconviction Act "provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354 (2010). Postconviction proceedings are divided into three stages. *People v. English*, 2013 IL 112890, ¶ 23, 987 N.E.2d 371.

¶ 41        Here, the trial court allowed the State's motion to dismiss defendant's petition at the second stage of proceedings. To survive a motion to dismiss at this stage, the defendant's petition "must make 'a substantial showing of a violation of constitutional rights.' " *People v. Wingate*, 2015 IL App (5th) 130189, ¶ 24 (quoting *People v. Coleman*, 183 Ill. 2d 366, 381 (1998)). "When a trial court dismisses a petition for postconviction relief at the second stage of proceedings," this court "review[s] [the] dismissal *de novo*, taking as true all well-pleaded facts that are not positively rebutted by the trial record." *Id.* ¶ 24 (citing *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006)). Second stage dismissal is only appropriate when the petition's allegations, construed liberally, "cannot support a substantial showing of a constitutional violation." *People v. Lamar*, 2015 IL App (1st) 130542, ¶ 12. A substantial showing " 'is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief.' " (Emphasis in original.) *Id.* ¶ 13 (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35).

¶ 42                              2. *Ineffective Assistance Claims*

¶ 43    Defendant's second amended petition, *inter alia*, alleged ineffective assistance of (1) trial counsel for failing to raise the issue of the speedy trial violation before the trial court and (2) appellate counsel for failing to raise the issue of trial counsel's ineffectiveness on direct appeal.

¶ 44    This court reviews claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). At the second stage of postconviction proceedings, the defendant must make a substantial showing (1) the conduct of trial counsel fell below an objective standard of reasonableness (*id.* at 687-88) and (2) the deficient performance prejudiced defendant such that a "reasonable probability" exists the result would have been different but for the deficient performance (*id.* at 694). The defendant must satisfy both prongs, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *** that course should be followed." *Id.* at 697; see also *Coleman*, 183 Ill. 2d at 397-98.

¶ 45    Claims of ineffective assistance of appellate counsel are judged under the same standards. See *People v. Salazar*, 162 Ill. 2d 513, 521 (1994). To establish ineffective assistance of appellate counsel, defendant must demonstrate (1) the failure to raise an issue was objectively unreasonable and (2) but for the failure to raise the issue, the trial court's ruling would have been reversed. *People v. Flores*, 153 Ill.2d 264, 283 (1992).

¶ 46                    3. *Right to Speedy Trial*

¶ 47    In order to demonstrate prejudice as to his ineffective assistance claims, defendant was required to show a reasonable probability that (1) but for trial counsel's failure to raise the issue of a speedy trial violation, the charges against him would have been dismissed and (2) but for appellate counsel's failure to raise the issue of trial counsel's ineffectiveness, this court

would have reversed his convictions. See *People v. Phipps*, 238 Ill. 2d 54, 65 (2010) ("Counsel's failure to assert a speedy-trial violation cannot establish either prong of an ineffective assistance claim if there is no lawful basis for raising a speedy-trial objection.").

¶ 48    A criminal defendant's right to a speedy trial in Illinois is codified at section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2020)), which states, in relevant part, as follows:

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record."

¶ 49    The supreme court has explained section 103-5(a)'s concept of "delay" as follows:

"A defense counsel's express agreement to a continuance may be considered an affirmative act contributing to a delay which is attributable to the defendant. [Citation.] The defendant bears the burden of affirmatively establishing a speedy-trial violation, and in making his proof, the defendant must show that the delay was not attributable to his own conduct. [Citation.] Any period of delay occasioned by the defendant temporarily suspends the running of the speedy-trial period until the expiration of the delay, at which point the statute shall recommence to run. [Citations.] An accused not tried within the mandate of section 103-5(a) must be discharged from custody, and the charges must be dismissed. [Citation.] The trial court's determination as to who is responsible for a

- 13 -

delay of the trial is entitled to much deference, and should be sustained absent a clear showing that the trial court abused its discretion. [Citations.]" *People v. Kliner*, 185 Ill. 2d 81, 114-15 (1998).

¶ 50   In considering claims a defendant was denied a speedy trial, this court has adopted definitions used by the Illinois Supreme Court. *People v. Cross*, 2021 IL App (4th) 190114, ¶¶ 79-83. Specifically, (1) the "speedy-trial term" refers to the 120 days referenced in the statute, (2) "discharge date" refers to the final day of the speedy-trial term, and (3) "delay attributable to the defendant" means "a delay of the speedy-trial term, with the effect of moving back that defendant's discharge date." *Id.* ¶¶ 80-82.

¶ 51                    4. *Whether Defendant Demonstrated Prejudice*

¶ 52   Defendant argues he demonstrated prejudice because (1) but for trial counsel's failure to raise the issue of a speedy trial violation, the charges against him would have been dismissed and (2) but for appellate counsel's failure to raise the issue of trial counsel's ineffectiveness, this court would have reversed his convictions. Specifically, defendant argues he was not brought to trial within 120 days because the trial court erroneously concluded the period of January 31, 2018, and February 26, 2018, constituted a delay occasioned by defendant rather than the State. The State argues that because defendant's counsel requested on January 31, 2018, that the trial be reset for April, the trial court correctly attributed delay to defendant and not the State. We agree with the State.

¶ 53   Defendant, relying on *People v. Lendabarker*, 215 Ill. App. 3d 540, 554 (1991), contends that because the *State* set the original trial date of February 26, no delay was attributable to defendant until that date—despite his request for a continuance on January 31. In *Lendabarker*, in the midst of trial settings that began substantially earlier, the defendant's case

was continued to April 10 as a result of a motion filed by the State. *Id.* at 554. On April 6, the defendant's counsel sought a continuance due to a scheduling conflict on April 10. *Id.* On appeal, the Second District found the trial court erroneously attributed the period of April 6 to April 10 to the defendant because "the *actual* delay chargeable to defendant did not begin until April 10, when his attorney was engaged in another trial." (Emphasis in original.) *Id.*

¶ 54       We conclude this case is distinguishable from *Lendabarker*. In *Lendabarker*, the defendant's case had actually been set for trial after completion of most of the normal pretrial proceedings which might otherwise result in delays. The delay in *Lendabarker* was not because of a motion to be addressed by the court, but a scheduling conflict making defendant's counsel unavailable for the trial date. The Second District properly found the existence of the conflict did not "cause" a delay of the trial. In contrast, here, on January 31, defendant expressly requested a later trial setting in April due to outstanding discovery, a request which, if allowed, necessitated removing the case from the upcoming trial calendar and moving it to the requested date. Defendant wanted more time to complete discovery, which was not an unreasonable request considering the young age of the case.

¶ 55       We further conclude defendant has not met his burden of showing the trial court abused its discretion when it found the period of January 31, 2018, to February 26, 2018, constituted delay attributed to defendant. January 31 was the first status setting after arraignment, well before any written discovery, or other pre-trial motions were filed—let alone answered. At the arraignment just over a month prior, the case had been set "on the February 26, 2017 jury trial calendar" by the trial court. A reasonably experienced trial judge and counsel would understand that in a case of this nature, the likelihood of proceeding to trial at such an early date was slight, if at all.

¶ 56     As expected, when defendant and counsel appeared at the status hearing on January 31, defense counsel informed the court there was still discovery outstanding and asked "if we can continue both the trial date and do another pre-trial." He then suggested a date of March 21, which the trial judge noted was the docket call for an April jury. The court advised defendant his counsel was asking to have the case moved "from the February jury calendar to the April jury calendar" and that this would toll his speedy trial time until the next trial setting. Defendant acknowledged he understood and agreed. As a result, defendant "caused" the case to be continued from the February call to the April call.

¶ 57     Unfortunately for defendant, it isn't always just about him. Defendant's argument ignores the reality of a busy trial docket where multiple cases are set for a date, to then be tried during that, or following weeks within that month as appears to be the case here. Once counsel asked to continue the case to the April trial calendar, his February 26 jury trial date was vacated and did not remain assigned to him. It was removed from the docketed date in February, presumably to allow the court to schedule another trial in its place—a simple matter of responsible trial management. *Ergo* the docket or status calls preceding each jury calendar date. That way the trial court could determine which and how many cases will actually be proceeding to trial during the next month's jury calendar. This is why defendant's acquiescence to counsel's actions, clearly reflected in the record on January 31, tolled his speedy trial term from that date.

¶ 58     We also note the court in *Lendabarker* held that the trial court properly charged the defendant with a continuance he requested to examine new evidence discovered by the State. *Id.* at 555. Similarly, in this case defendant was seeking additional time to continue discovery. We find it was not arbitrary or unreasonable for the trial court to conclude defendant's request for a continuance on January 31 had "the effect of moving back *** defendant's discharge date."

See *Cross*, 2021 IL App (4th) 190114, ¶ 82. It is well-settled that "an agreed continuance constitutes an affirmative act of delay attributable to the defendant which tolls the speedy-trial term." *Kliner*, 185 Ill. 2d at 115. Accordingly, the trial court's attribution of delay to defendant was not an abuse of discretion.

¶ 59    Because no underlying speedy-trial violation occurred, defendant has failed to show that but for trial and appellate counsels' failure to raise this issue, the charges would have been dismissed or that his conviction would have been reversed on direct appeal. Absent such a showing of prejudice, defendant's ineffective assistance claims must fail. Accordingly, we conclude the trial court's dismissal of defendant's petition at the second stage of proceedings was proper and affirm the trial court's judgment.

¶ 60                                III. CONCLUSION

¶ 61    For the reasons stated, consistent with Illinois Supreme Court Rule 23 (eff. Jan. 1, 2021), we affirm the trial court's judgment.

¶ 62    Affirmed.

¶ 63    JUSTICE TURNER, specially concurring:

¶ 64    I agree we should affirm the trial court's judgment dismissing defendant's postconviction petition because no speedy trial violation occurred, and defendant, therefore, has not made a substantial showing he was denied effective assistance of counsel. Nonetheless, I write separately for two reasons. Specifically, I find paragraph 57 of the majority order confusing. Accordingly, in its stead, I would simply conclude defendant requested a new trial date, and in doing so, he also continued the January 31, 2018, pretrial date to March 21, 2018. See *supra* ¶ 56 (noting counsel inquired " 'if we can continue both the trial date and do another pre-trial' "). Thus, all the days at issue are chargeable to defendant. Additionally, although I

agree with the commentary in paragraph 55 of the majority order, I do not believe the majority's

observations in that paragraph affect a speedy trial calculation.