THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD SMITH, Defendant-Appellant.

First District (5th Division)   No. 1—90—3622

Opinion filed December 16, 1994.

Michael J. Pelletier and Patricia Mysza, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth McCurry, and Jonathan Lustig, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:[1]

## BACKGROUND

On November 20, 1990, the circuit court of Cook County convicted the defendant-appellant Richard Smith of home invasion, armed robbery, armed violence, residential burglary and possession of a stolen motor vehicle. On December 19, 1990, the court sentenced him to a 25-year term of imprisonment for the home invasion, 25 years for the armed robbery, and seven years for the possession of a stolen motor vehicle. The court ordered these sentences to run concurrently but did not sentence the defendant for the residential burglary and armed violence convictions. For the reasons set forth below, we affirm both the defendant's conviction and his sentence.

## FACTS

The procedural history of this case is not disputed. The defendant was arrested pursuant to an arrest warrant on May 25, 1989. On June 21, 1989, the State filed an information against him, charging him with home invasion, armed robbery, armed violence, residential burglary, and possession of a stolen motor vehicle. We note here that the defendant has continuously remained in custody since his arrest.

The Cook County public defender represented the defendant until December 18, 1989, when private counsel filed an appearance on his behalf. On that date, the State filed an answer to the defendant's discovery request which indicated that the State might call Evelyn Gonzalez and Yvette Stoll as witnesses. Defendant's case was then continued by agreement to February 5, 1990, and then again, on the defendant's motion, to March 12, 1990.

On March 12, 1990, the defendant answered ready for trial. On the State's motion, the court continued the case, setting April 12, 1990, as the trial date. On April 12, 1990, the State indicated that it was not ready for trial. The court then continued the case on the

---

[1]To comply with the appellate court page limitations specified by revised Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, effective July 1, 1994), portions of this decision have been abridged and deleted for purposes of publication. The entire unabridged decision is contained in the Rule 23 order filed with the clerk of this court in the cause of *People of the State of Illinois v. Richard Smith*, Docket No. 1—90—3622.

State's motion until May 4, 1990. On May 4, 1990, the defendant again answered ready for trial but the State again requested a continuance. The State explained that it was unable to locate two witnesses, Gonzalez and Stoll, whose testimony was crucial to the prosecution, and therefore was not ready for trial. The court then continued the case on the State's motion until May 29, 1990.

On May 29, 1990, the State filed a motion for a 60-day extension of the speedy trial term pursuant to the speedy trial act, which limits the permissible interval between arrest and trial for prisoners in custody to 120 days. (See Ill. Rev. Stat. 1989, ch. 38, par. 103—5 (now 725 ILCS 5/103—5 (West 1992)).) On May 29, 108 days of the speedy trial term had elapsed.

In its motion for an extension the State averred that beginning on April 19, 1990, investigators unsuccessfully attempted to telephone Gonzalez and Stoll and unsuccessfully attempted to serve them subpoenas at their last known addresses. An investigator also checked arrest records, the Illinois Secretary of State, the Illinois Department of Public Aid, and the United States Post Office, all without success. The motion further stated that on May 23, 1990, the investigators discovered that Yvette Stoll's son attended elementary school in Plymouth, Indiana. The principal of the elementary school and the superintendent of schools for Plymouth were then requested to provide Yvette Stoll's address and telephone number. Those officials declined to do so without a court order.

The court, over the defendant's objection, granted the State's motion for a 60-day extension. It continued the case to June 8, 1990, for a status hearing on the State's efforts to locate Gonzalez and Stoll, and set a tentative trial date of July 10, 1990. The court also issued a written order directing the Plymouth, Indiana, school officials to release any information helpful in locating Yvette Stoll.

On June 8, 1990, the State informed the court that Evelyn Gonzalez and Yvette Stoll had been located and that the State would be ready for trial on the previously reserved date of July 10, 1990. The court continued the case, on the State's motion, until July 10, 1990. The defense filed a motion for discharge under the speedy trial act at the June 8 hearing but the court deferred argument on that motion.

On July 10, 1990, the defendant advised the court that his attorney was unable to appear and the court thereupon continued the matter until July 12, 1990. On July 12, 1990, the defendant's lawyer informed the court that on July 3, 1990, he received from the State notice of a report dated June 8, 1989, indicating that a latent fingerprint recovered from inside the victim's residence, lifted from a pair of pruning shears, matched the defendant's fingerprints. The

State acknowledged that it had not received that report until July 2, 1990. The defendant then requested a continuance to prepare a motion to exclude any fingerprint evidence and to prepare a new defense. The court continued the case, by agreement, until July 23, 1990, for a status hearing and set August 27, 1990, as a tentative trial date.

On July 23, 1990, the court heard argument of the defendant's motion for dismissal based on violation of the speedy trial act which he filed on June 8, 1990. The court then denied that motion. Also on July 23, the defendant filed an additional motion for discharge because of a violation of the speedy trial act and to exclude the recently discovered fingerprint evidence. The court denied that motion also. The case was then continued, by agreement, to the scheduled trial date of August 27, 1990. On August 27, 1990, the defendant's lawyer requested a continuance to have the defendant evaluated for post-traumatic stress disorder. The court subsequently continued the case, on the defendant's motion, until October 17, 1990, at which time trial began.

On appeal, the defendant raises the following contentions: (1) that the circuit court abused its discretion in granting the State's motion for a 60-day extension under section 103—5(c) of the Code of Criminal Procedure (Speedy Trial Act) (Ill. Rev. Stat. 1989, ch. 38, par. 103—5(c) (now 725 ILCS 5/103—5(c) (West 1992)); (2) that even if the circuit court properly exercised its discretion in granting an extension, the State nevertheless violated the Speedy Trial Act because the July 12 and July 23, 1990, continuances were not properly chargeable to him; (3) that the State failed to prove his guilt beyond a reasonable doubt; and (4) that the circuit court abused its discretion at sentencing by considering that he forcibly entered the victim's residence and that he was armed with a weapon at the time of the offense as factors in aggravation.[2]

OPINION

MOTION FOR CONTINUANCE

We note at the outset that the defendant waived review of the propriety of the circuit court's grant of the State's motion for a 60-

---

[2]Because of the page limitation imposed by revised Supreme Court Rule 23, only the defendant's first and second contentions, relating to the Speedy Trial Act, will be discussed in the published portion of this opinion. A discussion of the issues raised by his third and fourth contentions may be found in the unabridged decision contained in the Rule 23 order referred to in footnote 1 *supra.*

day continuance under the Speedy Trial Act by failing to specifically challenge the grant of that motion in his post-trial motion. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 185-90, 522 N.E.2d 1124, 1129-31; *People v. Alcazar* (1988), 173 Ill. App. 3d 344, 354, 527 N.E.2d 325, 331.) His post-trial motion did include the following clause:

> "24. The defense reasserts and reserves all motions, objections and exceptions that have been made in the course of the proceedings, before and during and after the trial."

Such general catch-all clauses in the post-trial motion are insufficient to preserve an issue for appellate review. (See *People v. Jones* (1992), 240 Ill. App. 3d 213, 226, 608 N.E.2d 266, 276; *People v. Buchanan* (1991), 211 Ill. App. 3d 305, 312, 570 N.E.2d 344, 350.) However, as discussed below, even if the defendant had preserved this issue for appeal, we would not have found that the circuit court abused its discretion in granting an extension of the speedy trial term.

The defendant argues that the circuit court abused its discretion in granting the State's motion for a 60-day extension of the 120-day speedy trial term. In support he states that the State failed to act diligently in attempting to locate Gonzalez and Stoll and that its motion for an extension under section 103—5(c) "never allege[d] the absence of the [fingerprint] report" linking the defendant to the crime scene.

Section 103—5(a) of the Speedy Trial Act provides in pertinent part:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***." Ill. Rev. Stat. 1989, ch. 38, par. 103—5(a) (now 725 ILCS 5/103—5(a) (West 1992)).

Section 103—5(c) of the Speedy Trial Act, however, provides:

> "If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days." (Ill. Rev. Stat. 1989, ch. 38, par. 103—5(c) (now 725 ILCS 5/103—5(c) (West 1992)).)

Reviewing courts will not disturb a decision to grant an extension under section 103—5(c) absent a clear showing that the trial court abused its discretion. *People v. Arndt* (1972), 50 Ill. 2d 390, 393, 280 N.E.2d 230, 232; *People v. Garcia* (1993), 251 Ill. App. 3d 473, 481, 621 N.E.2d 1035, 1041.

The defendant denies neither the materiality of Gonzalez's or Stoll's testimony nor that reasonable grounds existed at the time of

the State's motion for the court to believe that they could be located for trial. He argues only that the State failed to exercise due diligence in attempting to locate them because it did not begin to search for them until April 19, 1990, one week after the scheduled April 12, 1990, trial date, and approximately four months after it listed them as possible witnesses in its December 18, 1989, answer to the defendant's discovery request.

■ We cannot agree that the circuit court abused its discretion in granting a 60-day extension under section 103—5(c). Contrary to defense counsel's assertion at oral argument, we believe that due diligence within the meaning of section 103—5(c) requires diligence in obtaining evidence within the 120-day term, rather than diligence in obtaining evidence before a scheduled trial date. The fact that Gonzalez and Stoll were not available for the scheduled April 12, 1989, trial date is not dispositive where that trial date was well within the speedy trial term. The test of diligence was whether the State commenced its efforts to locate those witnesses in sufficient time to secure their presence before the 120-day term expired. See *Garcia*, 251 Ill. App. 3d at 481, 621 N.E.2d at 1041 (stating that "[t]he prerequisites for an extension of the 120-day period for trying an accused in custody are showings by the State that it has diligently sought, without success, to obtain material evidence *within the term* and that such evidence will be available at a later day" (emphasis added)); see also *People v. Howard* (1985), 130 Ill. App. 3d 967, 976, 474 N.E.2d 1345, 1352 (stating that "the essential requirements of section 103—5(c) in order to permit extension of the 120-day period within which a defendant's trial must commence are showings by the State it has diligently sought, without success, to obtain material evidence *within the term* and that such evidence will be available at a later day" (emphasis added)).

Moreover, although the circuit court scheduled April 12, 1990, as a trial date, we note that the case was not otherwise ready for trial, regardless of any failure by the State to locate its witnesses. The defendant's trial counsel admitted as much at the April 12, 1990, hearing. He acknowledged that the State received his answer to its discovery request on April 10, 1990, just two days before the scheduled trial date. Counsel stated, in response to the State's inability to proceed to trial on April 12, "[i]f [the State] just received [the answer to its discovery request] yesterday, I can understand that. *** If [the State] just received it, I can't expect [it] to have everybody on tap."

Accordingly, since the case, by defense counsel's own admission, was not in a trial posture on April 12, 1990, the fact that the State

began searching for Gonzalez and Stoll only after the scheduled April 12 trial date would not indicate that the State acted without due diligence. Even if Gonzalez and Stoll had been present in court on April 12, 1990, the case still would not have been ready for trial because the State received the defendant's answer to its discovery request only two days earlier.

In any event, even assuming that the State acted less than diligently in securing Gonzalez's and Stoll's presence for the scheduled April 12 trial date, we cannot say that it acted less than diligently in securing their presence within the 120-day term. When the State discovered that Gonzalez and Stoll no longer resided at their last known addresses, it took substantial steps to locate them. It checked with the Illinois Department of Public Aid, the Illinois Secretary of State, and the United States Postal Service and it also checked arrest records. After approximately one month of searching, it located Stoll's son in Plymouth, Indiana. Given these efforts, which were begun 53 days before the original 120-day term would have expired, we cannot say that the trial court abused its discretion in granting the State's motion for a continuance under section 103—5(c).

Beyond this, nothing in the record indicates that the State should have known that such searching for Gonzalez and Stoll would have been necessary. Both witnesses cooperated with the police and prosecution from the outset. At the time of their initial involvement, Gonzalez lived in Chicago and Stoll lived in Summit, Illinois, a Chicago suburb. Given their earlier cooperation and that they both resided in or near Chicago, it was reasonable for the State to delay contacting them until the defendant's case clearly was in a trial posture.

The defendant urges that *People v. Shannon* (1975), 34 Ill. App. 3d 185, 340 N.E.2d 129, suggests that the circuit court abused its discretion in granting the State's motion for an extension under section 103—5(c). In *Shannon,* the State filed a motion for an extension under section 103—5(c) on the last day of the term because two police officers were on furlough. (34 Ill. App. 3d at 186, 340 N.E.2d at 130.) The motion stated that the State began its attempts to locate those two officers only six days before the expiration of the term. 34 Ill. App. 3d at 186, 340 N.E.2d at 130.

We held in *Shannon* that such "belated efforts to locate these essential witnesses were not sufficient to constitute due diligence on the part of the State." (34 Ill. App. 3d at 187, 340 N.E.2d at 131.) The facts in this case, however, are distinguishable. Here, unlike *Shannon,* the State began its efforts to locate Gonzalez and Stoll 53

days before the term would have expired and filed its motion under section 103—5(c) approximately two weeks before expiration of the term.

■ We also must reject the defendant's argument that the State's failure to allege the absence of the fingerprint report linking the defendant to the crime scene in its motion for an extension under section 103—5(c) shows a lack of due diligence. The State sought an extension only to locate Gonzalez and Stoll, not to obtain a report whose existence it was not aware of until July 2, 1990, over one month later. Significantly, the defendant does not challenge the circuit court's denial of his motion to exclude the fingerprint evidence.

VIOLATION OF THE SPEEDY TRIAL ACT

As with his first contention, the defendant has also failed to preserve this issue for our review by failing to raise it in his posttrial motion. However, as discussed below, we would not have found that the Speedy Trial Act had been violated if this contention were properly before us.

The defendant contends alternatively that even if the circuit court properly exercised its discretion in granting the State's motion for a 60-day extension of the speedy trial term, the State nevertheless failed to bring him to trial within that 60-day extension. Specifically, he maintains that the two continuances from July 12 to July 23 and from July 23 to August 27 cannot be attributed to him, even though they were by agreement, because the State's late tender of the fingerprint report on July 3, 1990, necessitated them to allow adequate preparation for trial. Under the defendant's argument, the 60-day extension would have expired on July 28, 1990.

Delay in proceeding with trial will not be attributed to the defendant for the purpose of the Speedy Trial Act on the basis of a silent record or where the defendant fails to object to the State's request for a continuance. (*People v. Turner* (1989), 128 Ill. 2d 540, 553, 539 N.E.2d 1196, 1201; *People v. Reimolds* (1982), 92 Ill. 2d 101, 106, 440 N.E.2d 872, 875.) However, where the State and the defendant expressly agree to a continuance on the record, that continuance is attributable to the defendant. *Turner*, 128 Ill. 2d at 553, 539 N.E.2d at 1201; *Reimolds*, 92 Ill. 2d at 106, 440 N.E.2d at 875; *People v. Burchette* (1993), 257 Ill. App. 3d 641, 657, 628 N.E.2d 1014, 1026.

Moreover, defendants bear the burden of proving that the State has violated the Speedy Trial Act. (*People v. Jones* (1984), 104 Ill. 2d 268, 280, 472 N.E.2d 455, 460; *People v. Smith* (1993), 251 Ill. App. 3d 839, 842, 623 N.E.2d 857, 860.) We will not disturb a trial court's at-

tribution of delay to a given party absent a showing that the court abused its discretion. *Smith*, 251 Ill. App. 3d at 842, 623 N.E.2d at 860.

■ The record reveals that the defendant agreed to continue his case from July 12 to July 23 and from July 23 to August 27. At the July 12, 1990, hearing, defense counsel stated the following relating to his need for a continuance to adequately prepare for trial because of the newly discovered fingerprint evidence:

"DEFENSE COUNSEL: *** I'm going to have to have a Motion to Exclude, and under the circumstances I'm going to have to have a continuance today for that motion to explain it because it's a completely different picture ***. If your Honor please, I should like to prepare a written motion on this. I will take the continuance ***."

The court then continued the case, by agreement, to July 23 for a status hearing. At that same July 12 hearing, the following colloquy occurred with respect to a trial date:

"THE COURT: [August] 27th tentative trial date then. That's also by agreement?

DEFENSE COUNSEL: Yes, your honor, because either we have the 120 days—

THE COURT: Or don't have it. Is that gonna be a bench or jury indicated?"

At the July 23, 1990, status hearing, the following colloquy occurred:

"DEFENSE COUNSEL: Note—would you indicate by—by prior agreement, conditional prior agreement, it goes to the 27th, and then otherwise, it's to be charged against the State.

THE COURT: Wait a minute.

DEFENSE COUNSEL: The State says will you give us this much time? Actually, it's 31 days or 32 days since the date of the—

THE COURT: Well, you're imposing conditions now that I—in that respect that I don't know.

ASSISTANT STATE'S ATTORNEY: Judge, counsel had indicated—

DEFENSE COUNSEL: Is the term going to run from—is the whole term which was conditioned upon an extra 60 days—

THE COURT: I haven't calculated it out. If the actually [*sic*] 60 days goes beyond August 27th or not.

ASSISTANT STATE'S ATTORNEY: Neither have I, Judge. If I could be heard for just a moment. I mean, Counsel had represented [at the July 12th hearing]—words to the effect that he had his 120 days already.

THE COURT: That's right.

ASSISTANT STATE'S ATTORNEY: And would be willing to go by agreement until August 27th.

THE COURT: That's correct. That's what I have noted down, also. That will be the order. It will go right back to where we were. By agreement, August 27th.

DEFENSE COUNSEL: Is that for trial, and no further continuances?

THE COURT: That's final."

These excerpts from the July 12 and July 23, 1990, status hearings show that the case was continued, on both occasions, by agreement. In fact, the defendant's counsel not only agreed to those continuances but expressly requested them. Moreover, the defendant was present in court both on July 12 and July 23 but never objected to continuing his case until August 27.

However, the defendant now argues that even though his counsel "appeared to agree" to continue the case from July 12 until August 27, that 46-day period nevertheless should not be charged against him because his need for additional time to prepare for trial was occasioned by the tardiness of the State in tendering the fingerprint report. He maintains that his trial counsel could not have provided effective representation without extra time to prepare.

In *People v. Bowman* (1990), 138 Ill. 2d 131, 561 N.E.2d 633, our supreme court held that a defendant's motion for a dismissal under the Speedy Trial Act should have been denied where his newly appointed counsel agreed to a continuance beyond the expiration of the speedy trial term to prepare for trial. (138 Ill. 2d at 138, 561 N.E.2d at 637.) In *Bowman*, the circuit court appointed the public defender's office to represent the defendant but later permitted the public defender to withdraw because of a conflict of interest. (138 Ill. 2d at 135, 561 N.E.2d at 635.) The court then appointed a private attorney, who was under contract with the county to handle cases where the public defender had a conflict of interest, to represent the defendant. 138 Ill. 2d at 135, 561 N.E.2d at 635.

In the interim, that attorney resigned as the county conflict attorney and the court thereupon appointed another private attorney in his place to represent the defendant. This appointment occurred only three weeks before a previously scheduled trial date. (138 Ill. 2d at 135, 561 N.E.2d at 635.) Consequently, because of the lack of time to adequately prepare for trial, the newly appointed attorney, with the defendant's consent, agreed to a continuance beyond the expiration of the speedy trial term. (138 Ill. 2d at 135, 561 N.E.2d at 635.) The defendant subsequently filed a motion for dismissal under the Speedy Trial Act. (138 Ill. 2d at 136, 561 N.E.2d at 636.) The

circuit court granted that motion and the appellate court affirmed, holding that the defendant did not cause the need for a continuance and that he was, in effect, impermissibly forced to choose between going to trial with unprepared counsel or waiving his right to a speedy trial. 138 Ill. 2d at 136, 561 N.E.2d at 636.

On further appeal, the supreme court in *Bowman* reversed. Although the court agreed that the need for a continuance beyond the expiration of the speedy trial term was "not due to any overt actions by [the] defendant" (138 Ill. 2d at 140, 561 N.E.2d at 637), it stated that the "[d]efendant cannot contend that it was unfair to force him to choose between a speedy trial and effective assistance of counsel. Defendant may have a right, even of constitutional dimensions, to pursue whichever course he chooses, but the Constitution does not forbid requiring him to choose nonetheless." 138 Ill. 2d at 148, 561 N.E.2d at 642, citing *People v. Lewis* (1975), 60 Ill. 2d 152, 156-57, 330 N.E.2d 857, 860.

We note that even before *Bowman,* our supreme court recognized that defendants could properly be put to a choice between their right to a speedy trial and their right to effective assistance of counsel. In *People v. Johnson* (1970), 45 Ill. 2d 38, 257 N.E.2d 3, the supreme court stated:

"To argue that [the defendant] was forced to choose as he did is to argue technicalities. The right to a speedy trial and the right to avoid a precipitous trial are separate but related rights. Both are designed to assure an accused a fair trial, to prevent undue delay in one instance and undue haste in the other. [The defendant] can demand action or avoid action as the exigencies of his situation may dictate. But fairness and justice are not a one-way street. Society is likewise entitled to a fair administration of justice and the measure of right and wrong must always be that which is fair, not that which is technically astute or contrived. The fact that on occasion the accused might have to jeopardize the legislative benefits of the [speedy trial] rule by asserting his right to a continuance does not entail a denial of his right to a speedy trial." (45 Ill. 2d at 43-44, 257 N.E.2d at 7.)

The more recent case of *People v. Lendabarker* (1991), 215 Ill. App. 3d 540, 575 N.E.2d 568, is directly in point. In *Lendabarker* we held that a trial court's attribution to the defendant of a delay he requested to review a videotape of an accident scene which the State tendered only 10 days before a scheduled trial date was not an abuse of discretion. 215 Ill. App. 3d at 555, 575 N.E.2d at 577.

The defendant in *Lendabarker* argued that the continuance he requested to review the videotape should not have been charged to him because he was not responsible for its late discovery and late

tender. (215 Ill. App. 3d at 555, 575 N.E.2d at 577.) We disagreed with the defendant's argument, holding that since the State acted diligently in tendering the videotape once it had been discovered, and since the defendant had 10 days between tender and the trial date to review it, the circuit court did not abuse its discretion in charging the defendant with the delay he requested. 215 Ill. App. 3d at 555, 575 N.E.2d at 577.

Here, we cannot agree that the circuit court abused its discretion in attributing to the defendant the continuances which he himself requested to assimilate the newly discovered fingerprint evidence into his trial preparation. The parties agree that the State tendered the fingerprint report to the defendant on July 3, 1990, 25 days before the 60-day extension of the speedy trial term would have expired had the defendant not requested a continuance. Moreover, the defendant alleges no wrongdoing on the State's part in the late tender of the report. Indeed, he states that the report "fortuitously came to the State's attention." Thus, we would not have found error in the trial court's refusal to discharge the defendant because of any violation of the Speedy Trial Act.

CONCLUSION

For the reasons discussed above, the judgment of the circuit court and the sentence imposed pursuant thereto are affirmed.

Affirmed.

COUSINS, P.J., and McNULTY, J., concur.