FIRST DIVISION

DECEMBER 24, 2001

No. 1-99-0138

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the Circuit

) Court of Cook County

Plaintiff-Appellee, )

)

) 96 CR 10552-2

)

DOIAKAH GRAY, ) Honorable Edwin A. Gausselin,

) Trial Judge Presiding

Defendant-Appellant, ) Honorable Paul Nealis,

) Sentencing Judge

JUSTICE TULLY delivered the opinion of the court:

Defendant, Doiakah Gray, was charged with first degree murder and armed robbery.  After a jury trial before the Honorable Edwin A. Gausselin, he was found guilty of first degree murder but was acquitted of armed robbery.  The defendant's case was then transferred, and the Honorable Paul Nealis sentenced the defendant to 80 years in the Illinois Department of Corrections.  The defendant appeals raising the following issues: (1) whether the trial court erred in granting the State's motion to extend the time to commence trial; (2) whether the trial court erred in ruling that the State's use of peremptory challenges to dismiss four African-American potential jurors from the venire was race-neutral; and (3) whether the trial court abused its discretion in sentencing the defendant to an extended-term sentence of 80 years.

BACKGROUND

Defendant does not challenge the sufficiency of the evidence of his guilt, nor does he contend that the jury's conclusion that he was guilty was against the manifest weight of the evidence.  Accordingly, we will set out only the facts relevant to the issues raised in this appeal.  For context, we note that the following facts were presented in the State's case in chief.  On December 2, 1994, Don Rietveld and Gary Bilbrey
 were at a bar in Harvey, Illinois.  Rietveld had a cellular phone.  The defendant and Troy Montgomery were also at the bar.  The defendant wanted Rietveld's cell phone so he told Rietveld and Bilbrey that he could find women for them and the four men left the bar together and drove off in Rietveld's truck.  After making a stop at a liquor store, they continued driving until the defendant directed Rietveld to stop the truck at 163
RD
 Street and Honore.  The defendant then used Rietveld's cell phone purportedly to call some women.  Instead, the defendant jumped out of the truck and ran with the phone.  Montgomery also jumped out of the truck and ran approximately one block to his house.  Rietveld got out of the truck and chased after the defendant.  Montgomery watched from his garage and saw Rietveld confront the defendant and another man, Tommy Smith.  Montgomery saw Tommy Smith shoot Rietveld once in the head and he saw Rietveld fall to the ground.  Montgomery then watched as the defendant walked over to Rietveld and shot him three times in the head as he lay motionless on the ground.  Rietveld was taken to South Suburban Hospital, where he died the following day of multiple gunshot wounds to the head.

The defendant was arrested for first degree murder on March 8, 1996.  He was arraigned on April 30, 1996, and remained in custody for the next 18 months as numerous continuances were agreed to between the State and the defendant.  Trial was set for November 17, 1997.
(footnote: 1)  On November 17, the State was unable to proceed with trial and requested a continuance because several witnesses were not present in court.  The defendant was ready for trial.  The case was continued to December 1, 1997, but the State's eyewitness, Troy Montgomery, was not present in court.  The matter was continued until January 12, 1998, when  the State informed the court that Montgomery was again not present in court.  The prosecutor stated that he had sent Montgomery a subpoena by mail but that Montgomery had not been personally served.  The State requested a warrant against Montgomery be issued but the court denied the request.  The case was continued to February 9, 1998, and Montgomery again failed to appear.  The State presented a motion for a rule to show cause and the court continued the cause until February 10 for a hearing on the rule.  On February 17, 1998, the State filed a motion for a continuance.  The court allowed the defendant to file a response to the State's motion and a due diligence hearing was held on February 19, 1998.  The trial judge found that the State demonstrated due diligence in its efforts to locate the witness.  Accordingly, the judge granted the State's motion for a continuance.  Subsequently, the witness was located and trial began on April 14, 1998.

DISCUSSION

Speedy Trial

The first issue raised on appeal is whether the trial court abused its discretion in granting the State's motion for a continuance and extending the 120-day speedy-trial term.  The defendant contends that the State failed to act with due diligence in locating Troy Montgomery.  Specifically, defendant argues that the State did not make an attempt to locate Montgomery until 20 days after the trial date and that the State did not serve Montgomery with a subpoena until months after the trial date.  Defendant maintains that the trial court erred and denied his right to a speedy trial.  We disagree.

Persons in custody in this State shall be tried within 120 days from the date he was taken into custody unless delay is occasioned by the defendant.  725 ILCS 5/103-5(a) (West 1996).  The standard for continuing the case upon the State's motion is set forth in the statute:

"(c) If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days."  725 ILCS 5/103-5(c) (West 1996).

The decision whether to grant an extension under this statute is within the trial court's discretion, which will not be disturbed absent a clear showing of abuse.  
People v. Terry
, 312 Ill. App. 3d 984, 990, 728 N.E.2d 669 (2000);  
People v. Smith
, 268 Ill. App. 3d 1008, 1012, 645 N.E.2d 384 (1994).  On review, the court should examine the entire record as it existed at the time the trial court considered the motion for continuance.  
Terry
, 312 Ill. App. 3d at 990.

The test of due diligence is whether the State commenced its efforts to locate the witness in sufficient time to secure his presence before the speedy trial term expired.  
Smith
, 268 Ill. App. 3d at 1013.  Here, nothing in the record indicates that the State had reason to believe  Montgomery would fail to be present on the scheduled trial date of November 17, 1997.
(footnote: 2)   After that date, the record shows that the State made sufficient efforts to locate Montgomery and secure his presence at trial.  Between December 1997 and February 1998, two State's Attorney office investigators made 16 attempts to locate Montgomery at his home.  They  interviewed neighbors and family members and obtained information about Montgomery's employment and criminal history.  During this same time period, three Markham police officers visited Montgomery's home on six occasions and spoke to Montgomery's mother.  The Illinois State Police also sent two investigators to Montgomery's home and they placed Montgomery's home under surveillance for a two-week period in January and February of 1998.  The State also requested a warrant to arrest Montgomery, sent Montgomery a trial subpoena, and petitioned the court for a rule to show cause why Montgomery should not be held in contempt.  Finally, the State made its application for a continuance within the speedy-trial term.

Accordingly, we conclude that the granting of an extension was not an abuse of discretion and that the defendant was not denied his right to a speedy trial.

Batson 
Issue

The next issue is whether the circuit court erred in finding the State's explanations to be legitimate, race-neutral reasons for the State's exercise of peremptory challenges against African-American venirepersons.  In 
Batson v. Kentucky
, the United States Supreme Court held that the equal protection clause of the fourteenth amendment prohibits prosecutors from excluding potential jurors based on their race.  
Batson v. Kentucky
, 476 U.S. 79,  90 L. Ed. 2d 69 (1986). 106 S.Ct. 1712,

Batson
 provides a three-step analysis for the evaluation of racial discrimination claims in jury selection. See 
Purkett v. Elem
, 514 U.S. 765, 131 L.Ed.2d 834, 115 S. Ct. 1769, (1995) (
per curiam
) (emphasizing the distinct nature of steps two and three of the 
Batson
 analysis).  Once a defendant establishes a 
prima facie
 case under 
Batson
, the burden then shifts to the State to come forward with a race-neutral explanation for the challenge.  See 
People v. Nicholson
, 218 Ill. App. 3d 273, 278, 577 N.E.2d 1313 (1991).  This step requires that the prosecutor give clear and reasonably specific, legitimate, race-neutral reasons.  
People v. Randall
, 283 Ill. App. 3d 1019, 1025, 671 N.E.2d 60, 65 (1996).  In assessing the explanation, the focus of the court's inquiry is on the facial validity of the prosecutor's explanation.  
Hernandez v. New York
, 500 U.S. 352, 360, 114 L.Ed.2d 395, 406, 111 S. Ct. 1859, 1866, (1991).  The reasons given by the State need not rise to the level necessary to justify exclusion for cause, but they must constitute more than a mere denial of discriminatory motive.  
Batson
, 476 U.S. at 97-98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1723-24,  However, unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral.   
Hernandez
, 500 U.S. at 360,  114 L. Ed. 2d at 406, 111 S. Ct. at 1866,

The trial court determines whether the reasons given by the State are sufficient or whether they are pretextual.  
People v. Harris
, 129 Ill. 2d 123, 544 N.E.2d 357 (1989).  Since the trial court's determination on this issue is factual and turns on credibility, its finding that the State excused minority venire members for race-neutral reasons will not be reversed unless it is clearly erroneous.  
Batson
, 476 U.S. at 98 n. 21, 90 L. Ed.2d at 89 n. 21, 106 S. Ct. at 1724 n. 21,.  Here, the trial judge found that the defendant had made a 
prima facie
 showing of discrimination and required the State to present race-neutral reasons for its exclusion of four African-American venire members.  The sufficiency of those explanations will be examined below.

(1) Freddie Phillips

The State's reason for excluding Mr. Phillips was his lack of candor during 
voir dire
.  Specifically, the State explained that Mr. Phillips stated he had never been involved in the criminal justice system when, in fact, he had a prior arrest.

Illinois law allows a prosecutor to excuse a prospective juror if he/she conceals a prior criminal charge.  
People v. Hudson
, 157 Ill. 2d 401, 429, 626 N.E.2d 161 (1993).  Here, the record indicates that Mr. Phillips stated he had never been involved in the criminal justice system.  In fact, he had a prior arrest.  We find no error in the trial court's acceptance of the State's explanation as to Mr. Phillips as race-neutral.

(2) Florence Chapman

Ms. Chapman was an African-American, 81-year-old widower who lived in a senior citizen home.  She had retired from Ameritech and did volunteer work.  She had served on a jury in a civil matter 20 years earlier and she had been the victim of a car-jacking.

At the 
Batson
 hearing, the prosecutor gave the following explanation for excusing Ms. Chapman:

"While we were selecting the jury, she was checking her watch as she was being questioned, she was looking around the courtroom.  She also indicated that she was a member of a senior citizen home.  She indicated that she lives in that home.  It's a different home than some type of a normal home.  The State views that as Miss Chapman may have some type of disability ... and the fact that she was checking her watch, distracting her attention from the jury selection process, we ask that she be stricken for those reasons."

The defendant argues that nothing in the record indicates that Ms. Chapman was disabled, yet the trial judge accepted the State's explanation as race-neutral.  The defendant contends that the trial judge failed to assess the facial validity of the State's explanation.  We disagree.

While the trial judge did not make a ruling as to whether Ms. Chapman was disabled, he did assess the validity of the State's concern that Ms. Chapman seemed disinterested and distracted.  The State's concern about the conduct or demeanor of a prospective juror could be considered a legitimate race-neutral reason for the exercise of a peremptory challenge. 
People v. Johnson
, 218 Ill. App. 3d 967, 986, 578 N.E.2d 1274, 1287-88 (1991).  A determination of whether Ms. Chapman's demeanor was the result of a disability is irrelevant to the prosecutor's concern that her inattentiveness would be a problem.  We find no error in the trial court's acceptance of the State's explanation as to Ms. Chapman as race-neutral.

(3) Henry Stevenson

The State's reason for excusing Mr. Stevenson was because he was of the same general age as the defendant.  The State explained that Mr. Stevenson may sympathize or empathize with the defendant.  The defendant argues that other potential jurors had children who were in the same age category as the defendant and the State did not challenge those potential jurors.

The fact that a prospective juror is similar in age to the defendant is a legitimate reason for exercising a peremptory challenge.  See 
People v. Andrews
, 155 Ill. 2d 286, 299, 614 N.E.2d 1184 (1993).  We find no error in the trial court's acceptance of the State's explanation as to Mr. Stevenson as race-neutral.

(4) Dora Hubbard

The State explained that its reason for excluding Ms. Hubbard was because she had worked as an educator at the Illinois Department of Corrections.  The State further explained that she may be sympathetic to the defendant because of her prior contact with inmates.

We cannot find error in the trial court's acceptance of the State's explanation as race-neutral.  Occupation as a teacher is an acceptable race-neutral explanation for the exclusion of a potential juror.  See
 People v. Harris
, 164 Ill. 2d 322, 336, 647 N.E.2d 893 (1994).  Thus, we find no error in the trial court's acceptance of the State's explanation as to Ms. Hubbard as race-neutral.

Sentencing

Defendant argues that the sentencing judge abused his discretion in sentencing the defendant to 80 years.  Defendant contends that the judge failed to consider the defendant's potential for rehabilitation.  Defendant further contends that he was penalized for exercising his right to a fair trial because in the plea conference proceedings, the trial court recommended a sentence of 40 years; however, after trial, defendant was sentenced to 80 years.  It is defendant's position that he was penalized for not accepting the plea bargain.

The defendant has waived this issue on appeal.  Section 5-8-1(c) of the Unified Code of Corrections (730 ILCS 5/5-8-1(c) (West 1994)) requires that a defendant file a written postsentencing motion in the trial court to preserve sentencing issues for appellate review.   
People v. Reed
, 177 Ill. 2d 389, 395, 686 N.E.2d 584 (1997).  Here, the defendant failed to file a section 5-8-1(c) postsentencing motion in the trial court.  Accordingly, defendant has waived review of his sentence.

CONCLUSION 

For the reasons set forth, we affirm the judgment of the trial court.

Affirmed.

COHEN, P.J., and O'MARA FROSSARD, J., concur.

FOOTNOTES
1: Defendant's brief contains numerous errors in the dates cited for trial and continuances.  This lack of accuracy concerns the court in light of the importance of the dates to the issue raised on appeal.  We specifically note page 12 of defendant's brief where he states that on January 12, 1998, the court continued the matter until February 9, 1997.  The error is blatant and forces this court to question the attention defense counsel gave to this appeal.

2: The record indicates an express agreement by the defendant to each continuance from the time he was taken into custody on March 8, 1996, until the scheduled trial date of November 17, 1997.  The statutory speedy-trial period was tolled by each continuance to which defendant expressly agreed.  
People v. Vasquez
, 311 Ill. App. 3d 291, 724 N.E.2d 984 (2000).