In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3704

DOIAKAH GRAY,

*Petitioner-Appellant,*

*v.*

MARCUS HARDY,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 6058—**Matthew F. Kennelly**, *Judge*.

ARGUED APRIL 9, 2009—DECIDED MARCH 12, 2010

Before MANION, ROVNER, and WOOD, *Circuit Judges*.

ROVNER, *Circuit Judge*. Doiakah Gray was convicted of first-degree murder in the State of Illinois and sentenced to an extended-term sentence of 80 years' imprisonment based on the trial court's finding that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. After the state courts denied collateral relief, Gray petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. He argued that

the trial court violated his rights under the Sixth and Fourteenth Amendments by imposing the extended-term sentence without submitting the underlying factual issue to a jury, *see Apprendi v. New Jersey*, 530 U.S. 466 (2000), and that he was denied the effective assistance of counsel. The district court denied his petition. We affirm that decision.

## I.

On the night of December 2, 1994, Gray, who was seventeen at the time, visited a bar in Harvey, Illinois, with his friend Troy Montgomery. Also at the bar that night were Gary Bilbrey and Don Rietveld. Gray noticed Rietveld's cell phone and decided to steal it. Gray convinced Rietveld and Bilbrey that he and Montgomery could take them to meet women, and the four men left in Bilbrey's truck. After they reached a nearby residential neighborhood, Gray directed that they stop and asked to use Rietveld's cell phone. Instead of making a call, however, Gray took the phone, jumped out of the truck, and ran. Rietveld chased after Gray.

Gray ran a short distance before encountering an acquaintance, Tommy Smith. Rietveld, in pursuit of Gray, arrived soon after. Rietveld approached the two men, and Smith shot him once in the forehead. Rietveld fell to the ground. Smith then handed the gun to Gray, and Gray shot Rietveld three or four times in the left side of the head. In a written confession after his arrest, Gray admitted shooting Rietveld and explained that he "figured the white dude knew me from the bar so I had

to finish things." Rietveld died the next day. A forensic expert concluded that any one of the gunshot wounds was sufficient to kill Rietveld and that each contributed to his death.

A jury found Gray guilty of first-degree murder. At his sentencing hearing in December 1998, the trial court concluded that Gray's crime warranted more than the generally applicable statutory maximum of 60 years because the murder was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." 730 ILL. COMP. STAT. 5/5-8-1(a)(1)(b), 5-8-2(a)(1) (1996). Thus the court sentenced Gray to an extended-term sentence of 80 years.

Gray appealed his conviction and sentence. He argued that he was denied his right to a speedy trial, that the prosecutors used their peremptory challenges to exclude African Americans from the jury, and that the sentencing court abused its discretion by ignoring mitigating evidence and penalizing Gray for exercising his right to trial. In December 2001 the Appellate Court of Illinois affirmed Gray's conviction and sentence. *People v. Gray*, 761 N.E.2d 1237 (Ill. App. Ct. 2001). The appellate court rejected on the merits Gray's challenges to his conviction and also concluded that he had waived review of his sentence because he did not file a post-sentencing motion in the trial court. *Id.* at 1240-43; *see* 730 ILL. COMP. STAT. 5/5-8-1(c) (1996). Gray did not seek leave to appeal the decision to the Supreme Court of Illinois.

Gray then obtained new counsel and filed a post-conviction petition in state court. This time he challenged only

his sentence. Gray argued that under *Apprendi*, which was decided while his direct appeal was pending, the trial court's imposition of an extended-term sentence based on facts not found by a jury beyond a reasonable doubt violated the Constitution. He further contended that his appellate counsel was constitutionally deficient given counsel's failure to notify the state appellate court about *Apprendi* and its impact on his sentence. Finally, Gray argued that his trial counsel had also provided ineffective assistance by failing to file a post-sentencing motion to preserve his sentencing arguments for appeal. The trial court rejected all three claims, concluding that Gray clearly qualified for the extended-term sentence and that his counsel's failure to challenge the sentence under *Apprendi* did not constitute deficient performance or cause him prejudice. The trial court thus denied Gray's post-conviction petition. Gray appealed, primarily arguing that his sentence violated *Apprendi* and was excessive, but also contending that both trial and appellate counsel had provided ineffective assistance.

Without addressing Gray's ineffective-assistance claims, the Appellate Court of Illinois affirmed the dismissal of his post-conviction petition. *People v. Gray*, No. 1-04-1771, slip op. at 1 (Ill. App. Ct. Feb. 17, 2006). The court agreed with Gray that, because the trial court and not a jury had found that his actions were exceptionally brutal or heinous and indicative of wanton cruelty, his extended-term sentence was imposed in violation of the constitutional rule announced in *Apprendi*. *Id.* at 5. Nevertheless, the court reasoned, Gray had "failed to timely object at trial," and thus the *Apprendi* error would warrant resentencing only if the circum-

stances met the criteria for establishing "plain error." *Id.* at 6. The plain-error doctrine, the court explained, "'allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence.'" *Id.* at 6-7 (quoting *People v. Herron*, 830 N.E.2d 467, 479 (Ill. 2005)). The court went on to conclude that Gray's act of shooting the unarmed Rietveld as he lay wounded on the ground was "both devoid of mercy and grossly ruthless" and so the *Apprendi* violation could not have prejudiced Gray or "'seriously affected the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 7 (quoting *People v. Crespo*, 788 N.E.2d 1117, 1125 (Ill. 2001)). Rather, the court explained, any jury presented with these facts "would have found that the crime was committed in a brutal and heinous manner, indicative of wanton cruelty." *Id.* Finally, the appellate court rejected Gray's argument that 80 years was excessive. *Id.* at 9-10.

Gray petitioned, still through counsel, for leave to appeal to the state supreme court. He argued that the *Apprendi* error constituted plain error and that his 80-year sentence was excessive, but he omitted from his petition any claim that his trial or appellate lawyer was ineffective. The supreme court denied leave to appeal. *People v. Gray*, 857 N.E.2d 677 (Table), (Ill. 2006). After that decision, however, Gray moved, pro se, for leave to file a late supplemental petition that included the omitted claims of ineffective assistance of trial and appellate counsel. Gray explained that he wished to preserve the issues for federal collateral review. The court denied him leave to file the supplemental petition.

Gray then turned to the district court. In his § 2254 petition he claimed that his extended-term sentence was imposed in violation of the rule of *Apprendi*, and that he received ineffective assistance from both his trial and appellate counsel. In response, the state argued that Gray had procedurally defaulted all three of his claims. A petitioner in federal court must first exhaust his state remedies by fairly presenting his claims through one full round of state-court review. 28 U.S.C. § 2254(b)(1); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009). Moreover, if a state court's adjudication of a claim rests on an adequate and independent state procedural ground rather than the merits of the claim, the claim is procedurally defaulted and a federal court on collateral review will not disturb the state's judgment. *Dretke v. Haley*, 541 U.S. 386, 392 (2004); *Johnson v. Loftus*, 518 F.3d 453, 455 (7th Cir. 2008). Procedural default may be excused, however, if the petitioner can show both cause for and prejudice from the default, or show that the district court's failure to consider the claim would result in a fundamental miscarriage of justice. *Dretke*, 541 U.S. at 393; *Gonzales v. Mize*, 565 F.3d 373, 381 (7th Cir. 2009); *Johnson*, 518 F.3d at 455-56.

Here, the district court concluded that Gray had procedurally defaulted the *Apprendi* claim. Gray did not raise the *Apprendi* issue in the state trial court, nor did he file a post-sentencing motion to preserve the argument, and, as a result, on post-conviction review the Illinois appellate court reviewed the claim for plain error only. The district court further concluded that Gray's procedural

default could not be excused. Gray could not show cause for the default, the court explained, because he had failed to present his claim of ineffective assistance of trial counsel through one complete round of state-court review. And in any case, the district court reasoned, Gray could not show that he was prejudiced by trial counsel's failure to preserve the *Apprendi* argument given that the undisputed facts show that "Gray shot an unarmed man in the head at least three times while the man was lying unconscious on the ground." Gray's actions were "not spontaneous," the court explained, but "deliberately designed to eliminate the victim as a potential witness," making it "extraordinarily unlikely" that a jury would not have found his behavior to have been exceptionally brutal, heinous, and indicative of wanton cruelty.

The district court next expressed doubt that Gray's "belated attempt" to raise the claim of ineffective assistance of appellate counsel in the Illinois supreme court, after leave to appeal already had been denied, was enough to save that claim from procedural default. Nevertheless, the court went on to address the ineffective-assistance claim on the merits. Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show that his counsel's deficient performance caused him prejudice. Here, the district court concluded that Gray's claim failed for lack of prejudice. The undisputed facts considered by the sentencing judge in extending Gray's sentence, the district court explained, "are precisely the types of facts Illinois courts have found to constitute exceptionally brutal and heinous behavior." Thus, even if Gray's

counsel had raised the *Apprendi* issue on direct appeal, the court reasoned, there was not a "reasonable probability that the appellate court would have reversed Gray's extended-term sentence." Accordingly, the district court denied Gray's petition but granted him a certificate of appealability for all of his claims. *See* 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b)(1).

## II.

We review de novo a district court's ruling as to procedural default. *Smith v. Gaetz*, 565 F.3d 346, 351 (7th Cir. 2009). On appeal Gray challenges the district court's conclusion that he procedurally defaulted his *Apprendi* claim and his claims of ineffective assistance of counsel. He further contends that the *Apprendi* error at sentencing and his attorney's failure to preserve the claim in a post-sentencing motion or to raise it on direct appeal caused him prejudice. The state maintains that Gray procedurally defaulted all of his claims. And even assuming that Gray's default was caused by counsel's deficient performance, the state contends, Gray was not prejudiced. Under Illinois law, the state argues, the facts of this murder clearly qualified Gray for an extended-term sentence and, thus, the trial court's determination of the matter as opposed to a jury was harmless. We agree that Gray procedurally defaulted all of his claims and conclude that he cannot establish either cause or prejudice to excuse his default.

We begin with Gray's *Apprendi* claim. The district court concluded that the claim was procedurally defaulted

because the Appellate Court of Illinois on post-conviction review resolved the claim based on an independent and adequate state-law ground without reaching the merits. If a state court clearly and expressly states that its judgment rests on a state procedural bar and does not reach the merits of a federal claim, then we are unable to consider that claim on collateral review. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Pole*, 570 F.3d at 937. And we have repeatedly explained that where a state court reviews the claim for plain error as the result of a state procedural bar such as the Illinois doctrine of waiver, that limited review does not constitute a decision on the merits. *See Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005); *Rodriguez v. McAdory*, 318 F.3d 733, 735 (7th Cir. 2003); *Neal v. Gramley*, 99 F.3d 841, 843-44 (7th Cir. 1996); *see also Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003) (explaining that the Indiana state courts' analysis of a claim for "fundamental error" is, like "plain error" review in Illinois, not a review on the merits).

Here, the Appellate Court of Illinois clearly and expressly relied on the state's doctrine of waiver to decide Gray's *Apprendi* claim. As the appellate court explained, under Illinois law "a plain error analysis applies where a defendant has failed to make a timely objection at trial." *Gray*, No. 1-04-1771, slip op. at 6. Gray, the appellate court continued, had "failed to timely object at trial," and, therefore, the court reviewed his *Apprendi* claim for plain error only. Accordingly, the state court's conclusion that Gray had not established plain error was not a decision on the merits, and thus we agree with the district court that the claim is procedurally defaulted.

Gray attempts to circumvent this result by arguing that Illinois's waiver rule could not be used to bar his claim because *Apprendi* was decided during the pendency of his direct appeal. We are not persuaded by this argument. In its decision, the appellate court acknowledged that *Apprendi* had not yet been decided at the time of Gray's trial, but relying on precedent established by the Supreme Court as well as the Supreme Court of Illinois, the appellate court reiterated that it was still limited to a plain error review of his claim. *Id.* (citing *United States v. Cotton*, 535 U.S. 625 (2002) (applying plain error review to unpreserved *Apprendi* argument, despite fact that *Apprendi* was decided during pendency of defendant's direct appeal), and *Crespo*, 788 N.E.2d at 1123-24). Gray is correct that, in the immediate wake of *Apprendi*, Illinois courts initially declined to apply the doctrine of waiver to *Apprendi* claims unpreserved in the trial court and, instead, remanded the cases for resentencing. *See People v. Swift*, 781 N.E.2d 292, 300 (Ill. 2002); *People v. Lathon*, 740 N.E.2d 377, 380 (Ill. App. Ct. 2000); *People v. Kaczmarek*, 741 N.E.2d 1131, 1138-39 (Ill. App. Ct. 2000), *aff'd in part and rev'd in part*, 798 N.E.2d 713 (Ill. 2003); *People v. Sutherland*, 743 N.E.2d 1007, 1015-16 (Ill. App. Ct. 2000). But the Supreme Court of Illinois has since concluded that, regardless whether the defendant was sentenced before the Supreme Court's ruling in *Apprendi*, the state's doctrines of forfeiture and waiver apply, and, thus, if a defendant has not timely objected in the trial court, plain-error analysis applies. *See Kaczmarek*, 798 N.E.2d at 722; *People v. Thurow*, 786 N.E.2d 1019, 1028 (2003); *Crespo*, 788 N.E.2d at 1124. We have also acknowledged that an

*Apprendi*-like objection was available to defendants even before the Supreme Court issued its decision, and, indeed, defendants began making the argument soon after the federal sentencing guidelines came into being. *Valenzuela v. United States*, 261 F.3d 694, 700 n.2 (7th Cir. 2001); *Garrott v. United States*, 238 F.3d 903, 905-06 (7th Cir. 2001).

Moreover, Gray cannot establish the requisite cause and prejudice to excuse his procedural default of the *Apprendi* claim. Gray contends that the ineffective assistance of his trial and appellate counsel—in failing to file a post-sentencing motion or to raise the issue on direct appeal—constitutes cause for his default. But to use the independent constitutional claims of ineffective assistance of trial and appellate counsel as cause to excuse a procedural default, Gray was required to raise the claims through one full round of state court review, or face procedural default of those claims as well. *See Smith*, 565 F.3d at 352; *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003). Gray, however, defaulted his claims of ineffective assistance by omitting them from his counseled petition for leave to appeal the decision affirming the denial of post-conviction relief. *See Smith*, 565 F.3d at 352. Gray argues that he included the ineffective-assistance claims in his pro se "motion for leave to file late supplemental petition" filed in June 2007—more than eight months after the state supreme court denied him leave to appeal—and that this filing satisfied his obligation to first fully and fairly present his claims for review in the state court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir.

2004). But the Illinois supreme court refused even to allow Gray to file the untimely supplemental petition, and in another case we concluded that a similarly filed late petition was insufficient to preserve a claim for federal review. *See Cawley v. De Tella*, 71 F.3d 691, 695 & n.8 (7th Cir. 1995) (holding that petitioner's motion for leave to file late petition for leave to appeal to Supreme Court of Illinois, which the court denied, was insufficient to preserve claims). Regardless, even if Gray managed to preserve his ineffective assistance claims for federal review—both as independent grounds for federal relief and as cause for his procedural default of the underlying *Apprendi* claim—he cannot establish that counsel's alleged errors caused him prejudice.

To establish prejudice as a result of counsel's purported deficiencies at trial and on appeal, Gray would have to satisfy the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Wrinkles v. Buss*, 537 F.3d 804, 815 (7th Cir. 2008). Under *Strickland*, Gray must establish a reasonable probability that, but for counsel's errors, he would not have received an extended-term sentence. *See Strickland*, 466 U.S. at 694; *Johnson*, 518 F.3d at 456. Gray makes two arguments that he was prejudiced by counsel's failure to raise the *Apprendi* argument. We note, however, that on post-conviction review the state trial court concluded that Gray could not establish that counsel's performance was deficient or that he suffered any prejudice. Again, even if we assume that Gray adequately preserved his claims of ineffective assistance, the trial court is the only state court to have addressed those claims on the merits, and that ruling would be entitled to

our deference under 28 U.S.C. § 2254(d). *See Sanders v. Cotton*, 398 F.3d 572, 584 (7th Cir. 2005); *Conner v. McBride*, 375 F.3d 643, 648-49 & n.3 (7th Cir. 2004). Both parties have failed to acknowledge the ruling of the state trial court, and thus neither has framed the issue in terms of whether the state court's application of *Strickland* was unreasonable. *See* § 2254(d); *Johnson*, 518 F.3d at 456. In any case, even without this added layer of deference, Gray cannot establish that he was prejudiced.

Gray first contends that counsel's failure to raise the *Apprendi* claim caused him prejudice because at the time of his direct appeal the Illinois appellate courts were issuing automatic remands for *Apprendi* errors. The focus of the *Strickland* test for prejudice, however, is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally unfair or unreliable. *Williams v. Taylor*, 529 U.S. 362, 391-93 & n.17 (2000); *Lockhart v. Fretwell*, 506 U.S. 364, 370-72 (1993); *Strickland*, 466 U.S. at 687; *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004). As noted above, the Illinois courts later recognized that an *Apprendi* error is not structural and, as such, does not require automatic remand. *See Thurow*, 786 N.E.2d at 1028. And contrary to Gray's assertion, the Supreme Court has consistently held that "the likelihood of a different outcome attributable to an incorrect interpretation of the law" does not constitute "the legitimate 'prejudice'" required under *Strickland*. *Williams*, 529 U.S. at 392 (citing *Fretwell*, 506 U.S. at 372). Gray therefore cannot prevail based on the Illinois courts' mistaken jurisprudence at

the time of his appeal. *See Williams*, 529 U.S. at 392; *Fretwell*, 506 U.S. at 370; *Strickland*, 466 U.S. at 695.

Gray's second attempt to show prejudice is also unavailing. Gray contends that had his appellate counsel raised the *Apprendi* claim, the appellate court would have vacated the extended-term sentence because the evidence presented in the trial court did not establish that he exhibited exceptionally brutal or heinous behavior indicative of wanton cruelty. *See* 730 ILL. COMP. STAT. 5/5-8-1(a)(1)(b). At the time of Gray's sentencing, Illinois law permitted the imposition of an extended-term sentence above the otherwise applicable statutory maximum for first-degree murder "if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." 730 ILL. COMP. STAT. 5/5-8-1(a)(1)(b), 5-8-2(a)(1) (1996). The Illinois legislature has since amended the statute to comply with *Apprendi*, and, accordingly, the statute now requires the "trier of fact" to make the necessary findings "beyond a reasonable doubt." 730 ILL. COMP. STAT. 5/5-8-1(a)(1)(b) (2002); *see* Pub. Act No. 91-953, 2000 Ill. Laws 2269 (eff. Feb. 23, 2001). There is no dispute that Gray's sentencing violated the dictates of *Apprendi*, but in light of the evidence presented at trial, the question is whether a reasonable probability exists that the appellate court would have concluded, on harmless error review, that a properly instructed jury could have found Gray ineligible for an extended-term sentence. After a review of the applicable Illinois case law, we have no doubt that the appellate court would have found the error harmless and that Gray's actions consti-

tuted "exceptionally brutal or heinous behavior indicative of wanton cruelty," as a matter of Illinois law.

Under Illinois law "brutal" behavior is defined as that which is "'grossly ruthless, devoid of mercy or compassion; cruel and cold-blooded.'" *Kaczmarek*, 798 N.E.2d at 723 (citing *People v. Nielson*, 718 N.E.2d 131, 148 (Ill. 1999)); *see People v. Nitz*, 848 N.E.2d 982, 994 (Ill. 2006). Heinous behavior is defined as behavior that is "hatefully or shockingly evil; grossly bad; enormously and flagrantly criminal." *Kaczmarek*, 798 N.E.2d at 723 (citing *Nielson*, 718 N.E.2d at 148). Finally, the behavior must also be indicative of wanton cruelty, which "requires proof that the defendant consciously sought to inflict pain and suffering on the victim of the offense." *Id.* (citing *Nielson*, 718 N.E.2d at 148). The defendant's history of violent crime, premeditation, and expression of remorse are also factors for consideration. *See People v. Andrews*, 548 N.E.2d 1025, 1032 (Ill. 1989); *People v. La Pointe*, 431 N.E.2d 344, 353 (Ill. 1981).

Gray challenges the "wanton cruelty" element; he contends that the state did not establish that he "consciously sought to inflict pain and suffering" on his victim. *Nitz*, 848 N.E.2d at 994. Gray argues that such a finding is impossible here because the state presented no evidence to show how much time elapsed between the first shot fired by Smith and Gray's additional shots or that the wounded Rietveld was conscious or could see Gray when he fired the gun. As support for his argument, Gray relies on *People v. Alvarez*, 799 N.E.2d 694, 698, 707-08 (Ill. App. Ct. 2003), in which the appellate court concluded that an *Apprendi* error was not harmless where

the defendant approached the victim from behind and shot him once in the back of the head. Gray also cites *People v. Rodriguez*, 655 N.E.2d 1022, 1033 (Ill. App. Ct. 1995), in which the court rejected an extended-term sentence because the murder could not be characterized as a "slow, extended, and extremely painful process."

In the overwhelming majority of cases, however, Illinois courts have upheld the application of an extended-term sentence for similar execution-style murders, particularly where the victim is helpless and wounded by some initial act. In *People v. Simmons*, the appellate court concluded that the *Apprendi* error was harmless where the victim was first shot by another person and fell to the ground, and the defendant then stood over the wounded victim and shot him once in the back of the head. 794 N.E.2d 995, 1002-03 (Ill. App. Ct. 2003). The court explained that it had "no doubt that the jury would have found that the murder defendant committed was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty," since the "defendant killed the wounded victim in an execution-style manner." *Id.* at 1003. Similarly, in *People v. Fauntleroy*, the court upheld an extended-term sentence—despite the defendant's lack of premeditation or history of violent crime—based on the "one key fact" that the killing "was an execution style murder, with the victim being shot three times in the back of the head after being knocked to the ground." 586 N.E.2d 292, 300 (Ill. App. Ct. 1992). Additionally, in those cases involving the execution-style murder of a wounded victim, Illinois courts have not required any showing that the victim remained conscious

for the final shots, nor have they focused on the duration of the entire attack. *See, e.g.*, *People v. Tenney*, 807 N.E.2d 705, 717 (Ill. App. Ct. 2004) (holding that *Apprendi* error was harmless where defendant received extended-term sentence for shooting victim once and immediately directing accomplice to finish the job with two close-range gunshots to the head); *People v. Hill*, 691 N.E.2d 797, 800, 806 (Ill. App. Ct. 1998) (upholding extended-term sentence where defendant first pushed victim, causing her to hit her head and fall unconscious, and then cut her throat while she lay unconscious); *People v. Willis*, 702 N.E.2d 616, 628-29 (Ill. App. Ct. 1998) (upholding extended-term sentence where defendant stood over fallen victim and shot him multiple times); *People v. Williams*, 673 N.E.2d 1169, 1175 (Ill. App. Ct. 1996) (upholding extended-term sentence where defendant shot victim twice then, after some time, shot her twice more for "no apparent reason" while victim was still alive).

Gray also contends that his statement to police—that he believed he had to eliminate Rietveld as a potential witness—shows panic instead of premeditation, and that his panic and his minimal criminal history make it unlikely that a jury would have concluded that he deserved an extended-term sentence. But the state appellate court rejected a nearly identical argument in *People v. Payne* where the victim was accidentally shot by another, and the defendant then killed the wounded victim by shooting him twice from behind. 689 N.E.2d 631, 636-37 (Ill. App. Ct. 1998). In that case, the court acknowledged that "unforeseen developments led defendant to conclude that it was necessary to commit mur-

der" and that the defendant's conduct arguably "did not 'go beyond the mere infliction of death.'" *Id.* (quoting *People v. Ratzke*, 625 N.E.2d 1004, 1016 (Ill. App. Ct. 1993)). Nevertheless, the court affirmed the application of an extended-term sentence, emphasizing that a "'cold-blooded execution' after a robbery, just to cover up the fact that the victim knew the defendant, can constitute exceptionally brutal or heinous behavior indicative of wanton cruelty." *Id.* at 637.

In sum, we have no doubt that had Gray's appellate counsel raised the claim, the appellate court would have found the *Apprendi* error harmless because a properly instructed jury would have found that, as a matter of Illinois law, Gray's actions constituted exceptionally brutal or heinous behavior indicative of wanton cruelty. As a result Gray does not meet the exacting standards for relief under § 2254. Gray has procedurally defaulted each of his claims. And even if we were to conclude that he has adequately preserved his claims of ineffective assistance of counsel for federal review, he cannot show that counsel's failure to raise the *Apprendi* error caused him prejudice.

### III.

Accordingly, we AFFIRM the judgment of the district court.